**BUSINESSMEN AFFECTED SEVERELY BY the YEARLY ACTION PLANS, INC. (BASYAP), Plaintiffs,**

v.

**D. C. CITY COUNCIL et al., Defendants.**

**Civ. A. No. 99–72.**

United States District Court, District of Columbia.

March 15, 1972.

Nicholas A. Addams, Washington, D. C., David A. Sutherland, Alexandria, Va., for plaintiffs.

Nathan Dodell, Asst. U. S. Atty., Thomas Nedrich, Asst. Corp. Counsel, Washington, D. C., for defendants.

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER**

JOHN LEWIS SMITH, Jr., District Judge.

This matter came before the Court on March 13, 1972 on plaintiff's motion for summary judgment, or in the alternative for preliminary injunction, and

defendants' motion to dismiss or for summary judgment. After consideration of those motions, points and authorities and exhibits in support thereof, oppositions thereto and arguments of counsel, the Court, in accordance with Rules 52 and 65 of the Federal Rules of Civil Procedure, makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Plaintiff is a non-profit corporation whose members are property owners, business operators and tenants of properties located within the downtown urban renewal area which are to be acquired and disposed of by defendant District of Columbia Redevelopment Land Agency in connection with the Second and Third Year Action Plans for the downtown portion of the Neighborhood Development Program in the District of Columbia.

2. Defendant District of Columbia Redevelopment Land Agency (RLA) is a federal agency established under the District of Columbia Redevelopment Land Act of 1945. It is empowered to acquire real property for the development of project areas in the District of Columbia, dispose of that property, and to accept financial assistance under Title I of the Federal Housing Act of 1949, as amended. Individual defendants Mister, Stone and Clark are, respectively, Executive Director, Assistant Executive Director for Neighborhood Development Projects, and Downtown Project Director of RLA.

3. Defendant Romney is Secretary of the Department of Housing and Urban Development (HUD), which renders financial assistance to local public agencies for redevelopment projects.

4. The District of Columbia City Council is the local governing body of the District of Columbia and its approval is required for all applications by RLA for federal financial assistance.

5. The National Capital Planning Commission (NCPC) is an independent federal agency created under 40 U.S.C. § 71(a) to prepare, adopt and amend comprehensive plans for the national capital, serve as the central planning agency for, and adopt boundaries of, redevelopment project areas and plans for the project areas. Action by NCPC is a requisite for exercise by RLA of its authority to acquire and dispose of real property for the redevelopment of the project area.

6. On January 9, 1969, after a two year RLA study financed by HUD, NCPC approved the downtown urban renewal plan. On January 28, 1969 the City Council voted to approve that general downtown plan.

7. On April 2, 1970 NCPC adopted modifications to the downtown plan to designate for acquisition all or part of squares 288, 289, 319 and 455, which lie within the downtown urban renewal area. On June 25, 1970 the City Council adopted a resolution approving those modifications. HUD subsequently entered into a funding agreement with RLA for the acquisition phase, or Second Year Action Plan, of the downtown program.

8. On January 18, 1972 the City Council approved acquisition controls for an additional site, square 252, and approved disposition controls for properties within squares 252, 288, 289, 319 and 455, in connection with the downtown urban renewal project. This disposition phase is the Third Year Action Plan. HUD funding of the Third Year Action Plan cannot be undertaken until formal agency approval of the disposition controls adopted by the City Council.

9. Those disposition controls cannot be complied with without demolition of existing structures located on those sites, most of which are three and four story buildings housing small shops and businesses, and the construction of multi-story office buildings of at least 110 feet in height, or up to the maximum height permitted by law.

10. The demolition and construction necessary to carry out the downtown urban renewal program will significantly

affect the environment. Replacement of the existing structures within those five squares with high-rise office buildings will permanently alter the character of the downtown area, increase pedestrian and vehicular traffic, parking and public transportation needs, all of which will have an impact on the environment.

11. Defendant RLA has and continues to acquire properties within those five squares and will assemble and offer them to developers for redevelopment in accordance with the disposition controls, although demolition does not appear to be contemplated for at least 120 days and no damage to the environment is likely to occur during that period.

12. Defendants have not prepared or submitted a formal impact statement, as required by Section 102(2) (C) of the National Environmental Policy Act of 1969, concerning the environmental impacts of the downtown urban renewal project.

13. Acquisition of properties by RLA for eventual redevelopment in accordance with the disposition controls adopted by the City Council is a major action in the downtown urban renewal project.

## CONCLUSIONS OF LAW

1. The downtown urban renewal project is a major federal action significantly affecting the quality of the human environment.

2. The National Environmental Policy Act of 1969, 42 U.S.C. § 4321 et seq., requires consideration of environmental impacts at every important stage in the decision-making process concerning the downtown urban renewal project. Calvert Cliffs Coordinating Committee, Inc. v. United States Atomic Energy Commission, 449 F.2d 1109 (D.C. Cir. 1971).

3. Plaintiff has made a substantial showing that in the planning, development and decisions to proceed with the downtown urban renewal project defendants have not complied with the requirements of the National Environmental Policy Act of 1969.

4. This action is not barred, *res judicata*, by the Order of this Court entered on July 30, 1971 in BASYAP v. D. C. R. L. A., Civil Action No. 1648–70.

5. If a preliminary injunction does not issue, plaintiff and its members will suffer irreparable injury for which there is no adequate remedy at law.

6. Issuance of the preliminary injunction will be stayed for a period of 120 days from the date hereof to afford HUD the opportunity to prepare and file a formal environmental impact statement for the downtown urban renewal project.

Accordingly, it is this 15th day of March, 1972

Ordered that the defendants, their agents, officers, servants, employees and attorneys, and any person in active concert or participation with them, be and they hereby are enjoined and restrained, pending the final disposition of this suit, from rendering any financial assistance, acquiring or disposing of any properties, or continuing in any way with the downtown urban renewal project, and it is further

Ordered that the issuance of this preliminary injunction be and it hereby is stayed for a period of 120 days from the date hereof, and it is further

Ordered that defendants' motion to dismiss be and it hereby is denied.

Decision on the cross-motions for summary judgment will be held in abeyance. Bond will be set at such time as the stay of issuance of the preliminary injunction terminates.