**STOP H–3 ASSOCIATION, a Hawaiian nonprofit corporation, et al., Plaintiffs,**

v.

**John VOLPE, individually and as Secretary of the U. S. Department of Transportation et al., Defendants.**

**Civ. No. 72–3606.**

United States District Court,
D. Hawaii.

Oct. 18, 1972.

Boyce R. Brown, Jr., Mattoch, Edmunds, Kemper & Brown, and Michael R. Sherwood, Hart, Sherwood, Leavitt, Blanchfield & Hall, Honolulu, Hawaii, for plaintiffs.

Jon T. Miho, Asst. U. S. Atty., and Warren H. Higa, Deputy Atty. Gen., Honolulu, Hawaii, for defendants.

DECISION AND ORDER

SAMUEL P. KING, District Judge.

For several years, the State of Hawaii and the Federal Department of Transportation have been planning the H–3 Highway from western Honolulu across the island to Kaneohe.  Construction began at both ends.  The middle portion of

the highway right-of-way, known as the Moanalua-Haiku section (after the two valleys it would traverse), has not been cleared for construction.

In July 1972, several individuals who live in or near the path of the proposed Moanalua-Haiku section of H–3 and several organizations whose members use the Moanalua and Haiku valleys, e. g., by hiking, expressed their concern about environmental effects of the highway by filing the present action. One cause of action alleges that the defendants failed to comply with the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–4347 and prays for a preliminary injunction, enjoining the highway project until an environmental impact statement is approved by the Secretary of Transportation. 42 U.S.C. § 4332(C).

█ The parties and their counsel have worked out a stipulation, whereby construction at the two ends will continue under certain guidelines,[1] but all acquisition and clearing of land and all construction with respect to the middle section will stop pending the trial of this matter on the merits. The only dispute remaining at this time is whether the preliminary injunction's scope will also prohibit design work on the Moanalua-Haiku section. The State of Hawaii let five contracts[2] for this design work, all after the effective date of NEPA (January 1, 1970). This court holds that the purposes and language of NEPA demand that all work, including design, be stopped pending approval of the impact statement. The termination of all work

will extend to the trial of this matter on the merits.

Lathan v. Volpe, 455 F.2d 1111 (9th Cir. 1972) sets forth the proper test for determining whether a preliminary injunction should issue in a NEPA action. The Court of Appeals was "satisfied that this case does not call for a balancing of equities or for the invocation of the generalities of judicial maxims in order to determine whether an injunction should [be] issued . . . " 455 F.2d at 1116. A less stringent standard is required to effectuate the declared policy of Congress, set forth in NEPA, specifically § 101(a), 42 U.S.C. § 4331(a).

Defendants contend that the design phase of the Moanalua-Haiku segment should proceed because its specific effect on the environment is minimal. The only physical impact would be ten-foot clearings, necessary to take test-borings of the soil.

However, this court believes that the design phase should not be examined individually to determine its specific impact.[3] Instead, it is appropriate to examine the purpose to which the engineering and design work will be put. It is not a part of the evaluation necessary to prepare a full impact statement; the statement has already been completed and is presently being reviewed by the Secretary of Transportation.

The only purpose for the design work is to advance the highway project itself. Because the contracts would involve the

1. The parties have stipulated that steps will be taken, including consultations with experts, to reduce the deleterious impact of this further construction on the environment, especially in relation to runoff of soil, sightliness, and noise. ·

2. As of July 20, 1972, federal and state agencies have expended $1,764,000 on contracts nos. 788, 856, 835, 1462 and 1831; the unexpended balance on these five contracts is approximately $2,837,646.

3. Defendants contend that this court should consider the economic impact of a delay. A substantial increase in the costs of the design work would allegedly result from

a delay. This is not at all obvious, for the contracts all contain the following clause:

Article III, Section 3.11

"The State reserves the right at any time and for any reason to suspend for a reasonable period or completely terminate the contract upon written notice to the consultant."

Without speculating as to the application of this clause, it is at least a subject that is arguable. Even if the state must pay more for the service under the contracts, then that is simply a result of the failure to comply with NEPA in the first place.

further expenditure of more than two million dollars, completion of these contracts would increase the stake which the state and federal agencies already have in the Moanalua-Haiku segment, *as is*. That is not the kind of compliance with NEPA envisioned by Congress in passing the act.

 The alternatives before the Secretary of Transportation include not only the various ways of proceeding with the project but also the total abandonment of the project. Calvert Cliffs Coordinating Committee, Inc. v. United States AEC, 146 U.S.App.D.C. 33, 38, 449 F.2d 1109, 1114 (1971). The impact statement is not supposed to be merely a progress report. It would become that, if any work continued during the review of the impact statement. La Raza Unida v. Volpe, 337 F.Supp. 221 (N.D.Cal. 1971) (injunction against preparation of plans, maps or other documents); Greene County Planning Board v. FPC, 455 F.2d 412 (2d Cir. 1972) (injunction against reports being prepared).

Therefore, it is ordered that the defendants, their agents and employees, and any persons in active participation with them, are hereby enjoined from commencing or continuing or permitting the commencement or continuation of work or preparation as provided in contracts numbered 788, 856, 835, 1462 and 1831. State and federal defendants are specifically enjoined from releasing any state or federal funds in payment for any work done under these contracts subsequent to the date of this order and until the final determination of the causes of action set forth in plaintiffs' complaint; it is the intent of this provision that funds may be released for payments for work done under these contracts prior to the date of this order. Test-borings which have physically begun under the contracts may be completed, but no new test-borings may be commenced except upon application to and order of this court.

Plaintiffs shall file a bond in the amount of $100.00 and for the payment of such costs and damages as may be suffered by any party who is found to have been wrongfully or unlawfully restrained.

A copy of this order shall be served forthwith upon the defendants.

This Decision and Order shall constitute the Court's findings of fact and conclusions of law as authorized by Rule 52 of the Federal Rules of Civil Procedure.