**STOP H–3 ASSOCIATION, a Hawaiian non-profit corporation, et al., Plaintiffs, Moanalua Gardens Foundation, Plaintiff-Intervenor,**

v.

**John VOLPE, Individually and as Secretary of the U. S. Department of Transportation, et al., Defendants.**

**Civ. No. 72–3606.**

United States District Court,
D. Hawaii.

Dec. 18, 1972.

Boyce R. Brown, Jr., Honolulu (Mattoch, Edmunds, Kemper & Brown, Honolulu, Hawaii, of counsel), and Michael R. Sherwood, Honolulu (Hart, Sherwood, Leavitt, Blanchfield & Hall, Honolulu, Hawaii, of counsel), for plaintiffs and plaintiff-intervenor.

Jon T. Miho, Asst. U. S. Atty., and Warren H. Higa, Deputy Atty. Gen., Honolulu, Hawaii, for defendants.

## DECISION AND ORDER DENYING APPLICATION FOR STAY PENDING APPEAL

SAMUEL P. KING, District Judge.

By their Application for Stay Pending Appeal filed on October 24, 1972, attorneys for Defendant Matsuda came to this Court seeking an order staying the preliminary injunction issued by this Court against all Defendants on October 18, 1972, 349 F.Supp. 1047. That preliminary injunction prohibits, with certain limited exceptions, the continued expenditure of Federal and/or State monies on the design, planning and preliminary engineering of Interstate Route H–3 so long as Defendant Secretary of Transportation Volpe has not approved a Final Environmental Impact Statement on the project.

On October 24, 1972, this Court issued an order granting Defendants' "Application" suspending the preliminary injunction. However, it now appears to the Court that the Order Suspending Injunction should not have issued inasmuch as the "Application" filed on behalf of Defendant Matsuda was not in conformity with applicable rules of Procedure, and accordingly that Order has been quashed.

This Court's decision to quash the Order Suspending Injunction is based upon a review of the applicable Rules of Procedure which have been aptly summarized in Moore's Federal Practice at 208.05, note 14 which states:

> "[Applications for] stays or injunctions [issued pursuant to Rule 62(c)] pending appeal of an injunction, since they are not available as of right, are applications to the court for orders, which by the terms of Civil Rule 7(b) shall be made by motion. Rule 6(b) requires that motions be served with notice of hearing unless they may be heard ex parte. There is no authority in the rules for the granting of a discretionary stay or injunction ex parte."

Following the hearing on Plaintiffs' Motion to Quash the Order Suspending Injunction and this Court's granting of Plaintiffs' Motion, Plaintiffs consented to waive the notice requirements to permit argument on whether or not a stay of injunction ought to be granted. Therefore, the propriety of granting a stay pending appeal pursuant to Rule 62(c) was then properly before this

Court. For the reasons set forth below, that Application for Stay is denied. The Court has, however, amended the original Decision and Order issued October 18, 1972 to provide that the order shall not become effective until November 24, 1972.

In reaching its decision not to stay the preliminary injunction, this Court is well aware that stay of an injunction pursuant to Rule 62(c) is not granted as of right by the filing of a supersedeas bond, but rather is granted at the court's discretion. See FRCP Rule 62(a) and 62(c).

Since a stay of injunction is relief which is equitable in nature, the granting of such relief is governed by the strict application of certain principles. Shinholt v. Angle, 90 F.2d 297, 298 (5th Cir. 1937) cert. denied 302 U.S. 719, 58 S.Ct. 40, 82 L.Ed. 555 (1937); Vacuum Oil Company v. Grabler Mfg. Co., 53 F. 2d 975 (6th Cir. 1931).

(1) A stay is issued to maintain the *status quo* where otherwise, absent the stay, there is a substantial likelihood that the basis for the appeal will be mooted by the operation of the injunction. United States v. El-O-Pathic Pharmacy, 192 F.2d 62, 79 (9th Cir. 1951).

(2) A stay is frequently issued where the trial court is charting new and unexplored ground and the court determines that a novel interpretation of the law may succumb to appellate review. Rodriguez v. San Antonio Ind. Sch. Dist., 337 F.Supp. 280 (W.D.Tex. 1972).

(3) However, a stay is also to be granted sparingly, insofar as

"If such relief (injunction) has been granted, it is an unusual case indeed in which an injunction granted to preserve the status quo, and vindicated in plenary trial, would be dissolved pending appeal. This is true because the very basis for the grant of the temporary injunction was the fact that irreparable injury might result (to the party receiving the benefit of the injunction)." Moore's Federal Practice, Section 62.05.

To implement these principles, the courts have developed a four-part test, which this Court adopts. Specifically, a stay pending appeal under Rule 62(c) should only be granted upon the following conditions:

(a) After the applicant for a stay has made a strong showing that he is likely to succeed on the merits of the appeal;

(b) After the applicant has established that unless a stay is granted he will suffer irreparable injury;

(c) If the applicant for a stay can show that no substantial harm will come to other interested parties; and

(d) If the court finds that granting the stay will do no harm to the public interest.[1]

Applying this four-part test to the facts in this case, the Court finds the following:

1. Defendant MATSUDA has not, either in the hearing on the injunction or in his application for a stay, "made a strong showing that he is likely to succeed on the merits of the appeal."

Both State and Federal Defendants have acknowledged that an environmental impact statement must be formulated for the H-3 project, and have agreed that pending the formulation and approval of that statement no right-of-

---

1. The development and use of the four-part test is illustrated by Moore's Federal Practice, Section 62.05; Covington v. Schwartz, 230 F.Supp. 249 (N.D.Cal. 1964) modified and aff'd, 341 F.2d 537 (9th Cir. 1965); Morbeto v. United States, 293 F.Supp. 313 (C.D.Cal.1968); Belcher v. Birmingham Trust Nat'l Bank, 395 F.2d 685 (5th Cir. 1968); Pitcher v. Laird, 415 F.2d 743 (5th Cir. 1969); Bayless v. Martine, 430 F.2d 873 (5th Cir. 1970); Virginia Petroleum Jobbers Assn. v. Federal Power Comm., 104 U.S. App.D.C. 106, 259 F.2d 921, at 925 (1958); Dewey v. Reynolds Metals Company, 304 F.Supp. 1116 (W.D.Mich. 1969).

way acquisition or construction should proceed. They have not, however, agreed to cease all financial expenditures on the project, and have urged that they be allowed to continue to expend approximately $2.5 million for design and engineering.

This Court disagrees with Defendants. The very essence of N.E.P.A. lies in the presumption that the thorough re-evaluation of a project. which occurs when a N.E.P.A. statement is reviewed may lead to a decision to abandon or substantially alter the project.

". . . . . [L]ike the 'detailed statement' requirement, [42 U.S.C. Sec. 4332(D)] seeks to insure that each agency decision maker has before him and takes into proper account all possible approaches . to a particular project (including total abandonment of the project) . . . . " Calvert Cliffs Coordinating Committee v. AEC, 146 U.S.App.D.C. 33, 449 F.2d 1109, at 1114 (1971).

Accordingly, while the N.E.P.A. review is ongoing, there should be (1) no continuing commitment to the project as if it were a *fait accompli*, for it is not; and (2) no action undertaken which makes it more difficult for the reviewing agency to impartially review and subsequently, if warranted, alter the project.

Certainly the halting of construction, pending the review, is critical.[2] But so, as well, is the halting of the continued expenditure of money. As the court in Keith v. Volpe, 4 ERC 1562 (C.D.Cal., 1972) stated:

"The Court would anticipate that the more the defendants spend on the freeway—whether for land acquisition or for some other purpose—the more difficult it will be to decide to abandon the project." 4 ERC 1562 at 1565.

In reaching this conclusion, the Court relies additionally on the following cases wherein the respective courts enjoined preliminary engineering and/or design pending the preparation and approval of an environmental impact statement.

Arlington Coalition v. Volpe, 458 F.2d 1323 (C.A.4, 1972); Keith v. Volpe, 352 F.Supp. 1324 (C.D.Cal.1972); La Raza Unida v. Volpe, 57 F.R.D. 94 (N.D.Cal.1971); Lathan v. Volpe, 455 F.2d 1111 (C.A.9, 1971); Ward v. Ackroyd, 344 F.Supp. 1202 (D.Md.1972); Northside Tenants Rights Coalition v. Volpe, 4 ERC 1347 (D.Wisc.1972); Goose Hollow Foothills League v. Romney, 334 F.Supp. 877 (D.Ore.1971); Greene County v. FPC, 455 F.2d 412 (C.A.2, 1972); Thompson v. Fugate, 452 F.2d 57 (C.A.4, 1971); Morningside-Lenox Park Association v. Volpe, 334 F.Supp. 132 (N.D.Ga.1971); Businessmen v. D.C. Council, 339 F. Supp. 793 (D.D.C.1971); National Helium v. Morton, 326 F.Supp. 151, 2 ERC 1372 (D.Kan.1970); NRDC v. Grant, 3 ERC 1883 (E.D.N.C.1971); Berkson v. Morton, 3 ERC 1121 (D. Md.1971); Nolop v. Volpe, 333 F. Supp. 1364 (D.S.D.1971).

These cases compel the conclusion that Defendants cannot make a strong showing that they will succeed on the merits. Accordingly, for purposes of determination of the propriety of the issuance of a stay, this Court concludes, as did the court in Bayless v. Martine, 430 F.2d 873, 879 (5th Cir. 1970):

"Since appellants failed to make out a prima facie case demonstrating a reasonable probability of success on the merits a fortiori they did not make that even stronger showing that is prerequisite to the grant of a stay and the issuance of an injunction pending

---

2. Cases in which construction has been halted pending formulation and approval of an environmental impact statement include *inter alia*: Arlington Coalition v. Volpe, 458 F.2d 1323 (CA 4, 1972); Keith v. Volpe, 352 F.Supp. 1324 (C.D. Cal.1972); Ward v. Ackroyd, 4; ERC 1209 (D.Md.1971); Environmental Defense Fund v. Corps., 325 F.Supp. 728 (E. D.Ark.1970); Environmental Defense Fund v. TVA, 339 F.Supp. 806 (D.Tenn. 1972); Northside Tenants' Rights Coalition v. Volpe, 346 F.Supp. 244 (D.Wisc. 1972).

a hearing on the merits of an interlocutory appeal."[3]

2. Defendant MATSUDA has not established that unless a stay is granted he will suffer irreparable injury.

▮ Defendant Matsuda has urged continually that he will suffer substantial monetary loss as the result of the injunction. This, however, is not sufficient basis for either forbearing to issue the injunction or for staying it.

▮ First, Defendant Matsuda is under the mistaken impression that N.E.P.A. contemplates a continuing commitment to a project under review. As discussed above, such is not the case. N.E.P.A. contemplates a suspension of commitments. It follows from this that:

". . . . [D]elay is a concomitant of the implementation of the procedures prescribed by N.E.P.A., hence the excuse of delay is not available to defendants." Greene County v. FPC, 3 ERC 1595.

Therefore, Defendant Matsuda must, as a logical consequence of his failure to comply with the law, experience some financial loss caused by delay.

Secondly, and more importantly, Defendant's characterization of his prospective irreparable injury is inadequate to qualify him for a stay under Rule 62(c).

"A stay pending appeal, usually in the form of an injunction, is necessary only if what may be done under the judgment is beyond the power of the Court of Appeals to undo by its judgment." Moore's Federal Practice, Section 208.03.

Traditionally, the irreparable injury contemplated by Rule 62(c) is that which will make the appeal moot. United States v. El-O-Pathic Pharmacy, *supra;* Eastern Greyhound Lines v. Fusco, 310 F.2d 632 (6th Cir. 1962) citing Hitchman Coal and Coke Co. v. Mitchell,

245 U.S. 229, 38 S.Ct. 65, 62 L.Ed. 260 (1917).

▮ Thus, prospective monetary damage is *not* irreparable injury. That injury, if wrongfully inflicted, is indemnified by bond under Rule 65(a), and in any event, even if the injury is suffered, the viability of the appeal is not affected.

Two additional points need be made. First, this Court has held that the rule governing the issuance of the preliminary injunction is not the conventional balancing of equities rule, but rather the rule set out in Lathan v. Volpe, *supra:*

"Lathan v. Volpe, 455 F.2d 1111 (9th Cir. 1972) sets forth the proper test for determining whether a preliminary injunction should issue in a NEPA action. The Court of Appeals was 'satisfied that this case does not call for a balancing of equities or for the invocation of the generalities of judicial maxims in order to determine whether an injunction should [be] issued . . .' 455 F.2d at 1116. A less stringent standard is required to effectuate the declared policy of Congress, set forth in NEPA specifically Sec. 101(a), 42 U.S.C. § 4331(a)." Court's Order of October 18, 1972, 349 F.Supp. at p. 1048.

Implicit in that holding, for purposes of this order, is that any balancing of the equities will favor Plaintiffs. The strong public policy articulated in the provisions of N.E.P.A. would make any other decision improper.

"We must stress as forcefully as possible that this language does not provide an escape hatch for footdragging agencies; it does not make NEPA's procedural requirements somehow 'discretionary'. Congress did not intend the Act to be such a paper tiger. Indeed, the requirement of environmental consideration 'to the fullest extent possible' sets a high standard for the agencies, a standard which must be rigorously enforced by the reviewing

3. See also: Pitcher v. Laird, 415 F.2d 743 (5th Cir. 1969) ; Belcher v. Birmingham Trust National Bank, 395 F.2d 685 (5th Cir. 1968).

courts." Arlington Coalition v. Volpe, 458 F.2d 1323, at 1331; citing *inter alia* Calvert Cliffs Coordinating Committee v. AEC, 146 U.S.App.D.C. 33, 449 F.2d 1109 (1971).

Secondly, this Court is compelled to note that Defendant Matsuda's continuing suggestion that he will be subjected to a multiplicity of suits is somewhat curious. Certainly, he may be sued by those firms in the employ of the State, but clearly, any such suit would be groundless; for the governing contracts specifically empower the State to suspend or terminate the contracts without resultant penalty.

3. Other parties may not suffer irreparable injury.

The Court acknowledges that the issuance of a stay would not, provided that all other requisite showings could be made, cause substantial harm to other interested parties.

4. The granting of a stay will harm the public interest.

Finally, the Court finds that if two and one-half million dollars are spent needlessly, the public interest will indeed be injured. Accordingly, Defendant Matsuda who has himself called to the attention of this Court the rate at which money is being spent on the project, cannot now make a credible showing that the "public interest will not suffer."

For the reasons set out in the foregoing, Defendant Matsuda's Motion for a Stay of Injunction under Rule 62(c) is denied.[4]

---

4. The cases cited by Defendants in support of their motion to stay are not persuasive. Businessmen v. D. C. City Council, 339 F.Supp. 793 (D.D.C.1972) is distinguishable insofar as in that case the primary defendant, HUD, had not as yet prepared the environmental impact statement. Accordingly, the court allowed a 120-day stay so that "planning, development and decisions" could continue as a basis for the preparation of the EIS. *Id.* at 795. Goose Hollow Foothills League v. Romney, 334 F.Supp. 877 (D.Ore.1971) erroneously cited by Defendants as 334 F.Supp. 887 is also distinguished for the same reasons. Defendants therein had not prepared an EIS and the court allowed them 90 days to prepare the EIS. *Id.* at 880. Finally, Hanly v. Mitchell, 4 ERC 1157 (2nd Cir. 1972) is distinguishable, again, for the same reasons. Defendants therein had prepared a deficient impact statement and were ordered to reformulate. A "short stay" of "no more than 30 days" was recommended.