### In re STAHL, ASANO, SHIGETOMI & ASSOCIATES, and Jon Riley Stahl, Noriko Asano, Debtors.

### Bankruptcy No. 80–00532.

United States Bankruptcy Court, D. Hawaii.

Nov. 3, 1980.

See also, 6 B.R. 232.

William H. Dodd, Gary Y. Shigemura, Thomas A. Hulten, Honolulu, Hawaii, for secured creditors.

Nicholas C. Dreher, Honolulu, Hawaii, for creditor.

Lawrence I. Weisman, Honolulu, Hawaii, for debtor.

## ORDER RE: DENIAL OF STAY

JOHN J. CHINON, Bankruptcy Judge.

On September 23, 1980, this Court, acting *sua sponte*, dismissed Debtor's petition filed under the Bankruptcy Reform Act of 1978 ("Code") because Debtor's earlier petition under the Bankruptcy Act of 1898 ("Act") was still pending in this Court 6 B.R. 232. The Debtor appealed, challenging only this Court's power to dismiss *sua sponte*. The issue now before this Court is whether the state court proceedings commenced against the Debtor when its petition under the Act was dismissed should be stayed pending appeal of the question of this Court's power to act *sua sponte* in dismissing the second petition. This Court concludes that a stay should not be issued.

### I.

The earlier petition in this proceeding was filed under Chapter XII of the Act on June 14, 1978 by Stahl, Asano, Shigetomi & Associates, a general partnership. See Bk. No. 79–00243. The partnership bought Makani Kai Hotel from Makani Development Company, Ltd., ("Makani") under an agreement of sale executed in 1973 and amended in 1978. The hotel under contract for sale is the Debtor's principal asset and Makani is the only secured creditor. Makani sued to foreclose on the property on April 6, 1978, but that foreclosure suit was stayed by the Chapter XII petition filed on June 14. Makani sought relief from that stay in this Court on December 7, 1979.

The Debtor did not adequately protect the assets of the estate while operating the hotel as a Debtor–in–possession. As this Court found on April 15, 1979: The Debtor misapplied monies held in trust for the creditors; the general partner loaned money to himself and paid personal creditors; and the Debtor filed untimely financial reports. The Debtor has also ceased making the $15,000.00 monthly payments due to Makani which represents the amount due under the contract, as affirmed by the Debtor and reduced by this Court.

A 1979 appraisal showed equity in the property. The appraisal was premised upon the availability of $200,000.00 for refurbishing and a projected 1979 net income of $297,000.00. But, as this Court also found on April 15, 1980, the existence of equity is clouded by the Debtor's inability to borrow the $200,000.00 under terms of the contract and by the fact that the actual 1979 net revenues fell far short of the projection.

In December 1979, the Debtor began filing a series of plans for reorganization. None was confirmed. The Debtor has admitted its inability to successfully continue operation of the property as a hotel. The Debtor filed a plan on March 31, 1980 calling for sale of the hotel and full payment of creditors within 120 days and agreed to dismissal of the Chapter XII petition or

adjudication as bankrupt if they should fail. On April 15, 1980, this Court set a timetable for filing a commitment letter for refinancing, concluding all matters preliminary to closing, and making final payment, and it provided for lifting of the stay, adjudication as bankrupt, or dismissal in the event the schedule was not met. The commitment letter was not filed and the stay was irrevocably lifted on May 5, 1980. The Debtor did not appeal the lifting of the stay. Because the stay was lifted and there was no possibility of a viable plan, the Chapter XII proceeding was dismissed on June 27, 1980. The dismissal was appealed to the district court on July 7, and that appeal is still pending.

Makani pursued its foreclosure rights in state court after the stay was lifted, and on August 21, 1980, summary judgment was granted in its favor. On August 27, the Debtor filed a motion in state court to stay the foreclosure pending its appeal of the summary judgment. The following morning, August 28, the Debtor filed its appeal notice in state court. In the afternoon of August 28, the Debtor filed a new petition under Chapter 11 of the Bankruptcy Code, thus initiating a second, simultaneous proceeding involving the same property, the same debts and the same creditors. On September 4, 1980, with the new Chapter 11 petition on file, the Debtor went back into state court to argue its motion to stay foreclosure pending appeal of the summary judgment.[1] But the Debtor did not inform the state court or other parties at that time of the pendency of the new Chapter 11 petition.

On September 23, 1980, this Court dismissed the Chapter 11 petition *sua sponte* because of the Chapter XII proceeding pending under the Bankruptcy Act. The Debtor did not move for reconsideration of the dismissal, but instead filed notice of appeal of the dismissal on September 26. Having lost the automatic stay because of the dismissal of the Chapter 11 proceeding, Debtor then filed a motion in this Court to stay the state court proceedings and maintain the status quo of the Chapter 11 proceeding pending appeal of the *sua sponte* dismissal. A hearing on the motion was held on October 2 and continued on October 7 and 10, 1980.

## II.

▆ Under Bankruptcy Rule 805 this Court may in its discretion stay proceedings pending appeal of its orders.[2] In determining whether an injunction should issue under Rule 805, courts apply the criteria applicable in injunctions pending appeal under Federal Rule of Civil Procedure 62(c). *In re Lewis Jones, Inc.*, 369 F.Supp. 111, 116 (E.D.Pa.1973). The United States District Court for Hawaii, in *Stop H–3 Association v. Volpe*, 353 F.Supp. 14 (D.Hawaii 1972), adopted a four–part test to determine whether or not a stay should be granted.

[A] stay pending appeal under Rule 62(c) should only be granted upon the following conditions:

(a) After the applicant for a stay has made a strong showing that he is likely to succeed on the merits of the appeal;

(b) After the applicant has established that unless a stay is granted he will suffer irreparable injury;

(c) If the applicant for stay can show that no substantial harm will come to the other interested parties; and

(d) If the court finds that granting the stay will do no harm to the public interest.

*Id.* at 16 (footnote to citations omitted). *See* 11 Wright & Miller, Federal Practice & Procedure § 2904 (1973).

▆ Applying this four–part test to the facts of this case, this Court finds that the

---

1. The state court judge refused to consider the motion to stay foreclosure on September 4, because the foreclosure order had not yet been signed.

2. Rule 805 provides in pertinent part:

Notwithstanding Rule 762 but subject to the power of the district court reserved hereinafter, the referee may suspend or order the continuation of proceedings or make any other appropriate order during the pendency of an appeal upon such terms as will protect the rights of all parties in interest.

Debtor has not, either in its memoranda or at the hearing on its motion, made a strong showing that it is likely to prevail on the merits of its appeal.

The merits of the Debtor's appeal involve a narrow procedural question: Does this Court have the power under the Bankruptcy Code to act on its own motion to dismiss a petition where an earlier petition is still pending. The Debtor has not made a strong showing that this Court cannot act *sua sponte* under such circumstances. The appeal does not address the question whether dismissal of the second petition is proper, that is, whether a Debtor can maintain a proceeding under the Bankruptcy Code while a proceeding for the same debts is still pending under the Bankruptcy Act.

The Debtor contends that the language of the Code, legislative history, and commentary in *Collier on Bankruptcy* clearly indicate the *sua sponte* dismissal is prohibited under any circumstances. Section 1112 of the Code "brings together all of the conver-

sion and dismissal rules for Chapter 11 cases." H.R.Rep.No.95–595, 95th Cong., 1st Sess. 405 (1977); S.Rep.No.95–989, 95th Cong., 2d Sess. 117 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787. Section 1112(b) provides in part that the court may dismiss a case "on request of a party in interest, and after notice and a hearing." [3]

The relevant language in section 1112(b) of the Code is an enactment of H.R. 8200, 95th Cong., 1st Sess. (1977). The legislative history of the language adopted in Section 1112(b) notes that the court has broad discretion to dispose of a case on request of a party in interest.[4]

The Senate draft of section 1112(b), which was not enacted, explicitly provided for *sua sponte* dismissals by the court,[5] although the accompanying legislative history cautioned courts to use the *sua sponte* power sparingly.[6]

The legislative history addressing the compromise bill is silent on why the House language was chosen over the Senate lan-

---

3. Section 1112(b) of the Code provides in full (emphasis added):

Except as provided in subsection (c) of this section, *on request of a party in interest, and after notice and a hearing*, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—
(1) *continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation*;
(2) inability to effectuate a plan;
(3) unreasonable delay by the debtor that is prejudicial to creditors;
(4) failure to propose a plan under section 1121 of this title within any time fixed by the court;
(5) denial of confirmation of every proposed plan and denial of additional time for filing another plan or a modification of a plan;
(6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;
(7) inability to effectuate substantial consummation of a confirmed plan;
(8) material default by the debtor with respect to a confirmed plan; and
(9) termination of a plan by reason of the occurrence of a condition specified in the plan.

4. H.R.Rep.No.95–595, 95th Cong., 1st Sess. 405 (1977) U.S. Code Cong. & Admin.News 1978, p. 6361 provides in part:

Subsection (b) gives wide discretion to the court to make an appropriate disposition of the case when a party in interest requests. The court is permitted to convert a reorganization case to a liquidation case or to dismiss the case, whichever is in the best interest of creditors and the estate, only for cause.

5. S. 2266, 95th Cong., 2d Sess. § 1112(b) (1978), *reprinted in* Collier on Bankruptcy, Appendix 3, at VII (15th ed. 1980), provides in part:

Except as provided in subsection (c) of this section, the court may at any time, on its own motion or on the motion of a party in interest, convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause....

6. S.Rep.No.95–989, 95th Cong., 2d Sess. 117 (1978), U.S. Code Cong. & Admin.News 1978, p. 5903, provides in part:

Subsection (b) gives wide discretion to the court to make an appropriate disposition of the case *sua sponte* or upon motion of a party in interest, or the court is permitted to convert a reorganization case to a liquidation case or to dismiss the case, whichever is in the best interest of creditors and the estate, but only for cause.... The power of the

guage which explicitly sanctioned *sua sponte* dismissal.[7] *Collier*, in reviewing the House and Senate language, concludes summarily that "[u]nder the Code, *sua sponte* action is prohibited since the court may act only on request of a party in interest". 5 Collier on Bankruptcy ¶ 1112.02 (15th ed. 1980).

Under the facts of this case, merely offering the language and history of section 1112(b) is not a strong showing that the Debtor is likely to prevail on appeal. To so hold would be to concede that the court lacks inherent power to act *sua sponte* to protect itself and its processes from multiple petitions by the same debtor.

■ Initially, Debtor has indicated no authority for the proposition that a Debtor

can have two cases, one under each enactment, pending simultaneously before the Court. A Debtor cannot have simultaneous Chapter XII and Chapter XI cases pending under the Act. 8 Collier on Bankruptcy ¶ 4.03[1] (14th ed. 1979). There is no provision in the Code that would allow two such cases under the Code to be maintained simultaneously. The Court sees no reason or authority why the circumstance of transition between the Act and the Code should be cause to read into the enactments a debtor's right to maintain simultaneous cases before the same court under both the Act and the Code.[8]

Without the power to dismiss *sua sponte* the Court would be powerless to dismiss a

---

court to act *sua sponte* should be used sparingly and only in emergency situations.

7. See the joint explanatory statement of the floor managers of the House and Senate bills, 124 Cong.Rec. H 11, 103 (daily ed. Sept. 28, 1978) (remarks of Mr. Edwards), reprinted *in* Collier on Bankruptcy Appendix 3, at XI (15th ed. 1980).

8. A few courts have considered whether the saving provision in the 1978 amendments prevents filing a Chapter 11 petition under the Code while an appeal is pending in Chapter XII petition under the Act. The case involved was procedurally distinguishable from the instant case because the Debtor filed its Code petition in a different bankruptcy court.

The Debtor, whose Chapter XII proceeding was on appeal from a dismissal that would allow foreclosure on its principal asset, moved to voluntarily dismiss its appeal, informing the Georgia district court that it intended to refile under Chapter 11 of the Code in Maryland. The Georgia district court informed the debtor its choice was to either continue the appeal under Chapter XII of the Act or have it dismissed with prejudice to its right to proceed under any bankruptcy law. *In re Macon Uplands Venture*, 2 B.R. 429, 434 (Appendix) (M.D.Ga.1979). The Georgia court's ruling was compelled by its conclusion that the savings clause of the reform act expressed congressional intent that when a case is commenced under the Act, the debtor's sole remedy is under the Act. *Id.* The savings clause, Bankruptcy Reform Act of 1978, Pub.L. 95–598, tit. IV, § 403(a), 92 Stat. 2683 (1978), provides:

A *case commenced* under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive

rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted. [Emphasis added].

The Maryland bankruptcy court, in contrast, read section 403(a) more narrowly. It ruled that the section only requires that a proceeding commenced before October 1, 1979 be governed by the Act, and it does not specifically preclude a new petition under the Code while an appeal from an involuntary dismissal under the Act is pending. It held that the Chapter 11 petition under the Code was properly filed in its court notwithstanding the pendency of the appeal in Georgia. *In re Macon Uplands Venture*, 2 B.R. 421, 426–27 (Bkrtcy.D.Md.1979), *discussed in In re Blue*, 4 B.R. 580, 2 C.B.C.2d 404 (Bkrtcy.D.Md.1980). What ensued was a jurisdictional "tug–of–war" between the Maryland bankruptcy court and the Georgia district court. *See In re Macon Uplands Venture*, 2 B.R. 429 (M.D.Ga.1979). (Concluding the Maryland court was wrong in its interpretation of Section 403, and noting that if the Chapter XII dismissal in Georgia were reversed and remanded there would be two reorganization proceedings pending in two courts, the Georgia district court enjoined the debtor from proceeding further in the Maryland Code petition and ordered transfer of the action to Georgia for consolidation.); *In re Macon Uplands Venture*, 2 B.R. 435 (Bkrtcy.D.Md.1979) (Maryland court refused to transfer Chapter 11 proceeding to Georgia and allowed debtor to continue to prosecute Chapter 11 proceeding in Maryland under the Code; *Id.*, 2 B.R. 444 (Bkrtcy.D.Md. 1980) (After evidentiary hearing on issue of transfer, Maryland court transferred Chapter 11 proceeding to Georgia for administration under the Code.).

suit except on the motion of a party. In determining whether the *sua sponte* power exists, the Court must consider the possibility that, for whatever reason, a motion to dismiss would not be forthcoming. In the present case, if the district court were to reverse this Court's earlier dismissal of the Chapter XII petition under the Act, then the same debtor, debts, creditors and property would be before this Court under two petitions requiring application of different law. For want of a motion by a party to dismiss one of the petitions such a situation would effectively paralyze the Court. The prospect of such a situation is adequate indication to this Court that it must have the inherent power to *sua sponte* protect itself and its processes from multiple petitions from the same debtor. *Cf. Freshman v. Atkins*, 269 U.S. 121, 123–24, 46 S.Ct. 41, 41–42, 70 L.Ed. 193 (1925) (Where discharge of a debt in a bankruptcy proceeding under one petition was pending and a second proceeding was brought to discharge the same debt, *sua sponte* dismissal of the second petition was proper to protect the court and ensure orderly administration of justice.); *Chatanooga Federal Savings & Loan Association v. Northwest Recreational Activities, Inc. (In re Northwest Recreational Activities, Inc.)*, 4 B.R. 36, 6 Bankr.Ct. Dec. 164, 166 (N.D.Ga.1980) (recognizing the inherent power of court under the Code to impose good faith requirement on petition in order to safeguard its jurisdictional integrity as conferred by statute over petitioners). Furthermore, as the Supreme Court noted in *Freshman*, the *sua sponte* action does not address the merits of the case, only the Debtor's right to maintain the second action while the earlier petition is pending. 269 U.S. at 123, 46 S.Ct. at 41–42.

The language of section 1112 should not be read to preclude the power to *sua sponte* dismiss multiple petitions. While the plain language of a statute is the best indication of legislative purpose, it is well settled that a court must look beyond the plain meaning of the statute if the plain meaning would lead to absurd or futile results. *United States v. American Trucking Associations*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940). The prospect that this Court might face a debtor, such as Stahl, under simultaneous petitions requiring application of different law without having power to resolve the conflict strikes this Court as an absurd result not contemplated by Congress. The Court finds no indication in legislative history that Congress anticipated the problem of simultaneous petitions when it opted for the House language which was silent on court's *sua sponte* power. On the contrary, the Code and its legislative history anticipate the orderly administration of bankruptcy laws by courts. In particular, the savings provision in the transition provisions, Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, tit. IV, § 403, 92 Stat. 2683 (1978) indicates legislative intention that there be an orderly transition from the old law to the new.[9] The availability of *sua sponte* power for use in the present situation facilitates that intended orderly transition.

The Debtor has not made a strong showing that this Court is without the power to dismiss *sua sponte* under the present circumstances. Because it has not met the first part of the required four–part test, this Court does not consider the remaining requirements for a stay.

### III.

IT IS HEREBY ORDERED that Debtor's motion to stay proceedings is Denied.

Another court in *In re Eagson*, 1 B.R. 777, 2 C.B.C.2d 309, 313 (Bkrtcy.E.D.Pa.1980), held that, where a Chapter XI petition under the Act is pending, section 403(a) requires that the substantial rights of the debtor and creditors be determined by the Act. In that case the debtor was adjudicated bankrupt and the creditors began to foreclose, but the case under the Act had not yet been dismissed when the petition under the Code was filed. Other cases have held that section 403(a) prevents voluntary dismissal of a case under the Act to permit a debtor to refile under the Code. *E. g., In re Geiger*, 4 B.R. 444, 1 C.B.C.2d 1004 (W.D.N.Y. Feb. 29, 1980).

**9.** Section 403(a) appears in footnote 8 *supra*.