**WYOMING OUTDOOR COORDINATING COUNCIL et al., Plaintiffs-Appellants,**

**v.**

**Earl L. BUTZ, in his official capacity as Secretary of the United States Department of Agriculture, et al., Defendants-Appellees.**

**No. 73-1477.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Aug. 14, 1973.

Decided Sept. 21, 1973.

———◆———

John D. Leshy, Palo Alto, Cal. (Toby Sherwood, Palo Alto, Cal., John R. Hursh, Riverton, Wyo., and Jack Speight, Cheyenne, Wyo., on the brief), for plaintiffs-appellants.

Robert L. Klarquist, Atty., Dept. of Justice, Washington, D. C. (Wallace H. Johnson, Asst. Atty. Gen., Richard V. Thomas, U. S. Atty., Cheyenne, Wyo., and Carl Strass, Atty., Dept. of Justice, Washington, D. C., on the brief), for defendants-appellees.

Richard I. Leedy, Riverton, Wyo. (James L. Hettinger, Hettinger & Leedy, Riverton, Wyo., on the brief), for defendant-appellee, Champion International Corp.

Before SETH, HOLLOWAY and DOYLE, Circuit Judges.

HOLLOWAY, Circuit Judge.

Appellants seek declaratory, injunctive and mandamus relief against road building and logging in connection with two contracts for the sale of timber from areas in the Teton National Forest in Wyoming which the appellees would carry out without preparation and distribution of an environmental impact statement (EIS) as provided by Section 102(2)(C) of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C.A. § 4332(2)(C).[1] Appellants' position is that the statute bars performance of the contracts until the requirements of NEPA have been met. The District Court upheld the decision of the federal officials that the sales did not involve a major federal action significantly affecting the quality of the human environment and that the impact statement requirement did not apply. 359 F.Supp. 1178.

We are unable to agree with the District Court. In view of facts that are undisputed as to various actions to be taken under the contracts affecting large undeveloped areas in the Teton Forest, and the strict provisions and policy underlying the statute, we are convinced that the impact statement procedures were required to be followed.

*The proceedings and decision in the District Court*

At the commencement of the suit the District Court temporarily restrained timber cutting and road building in the sale areas. The Court consolidated the hearing on the preliminary injunction application with the trial on the merits. After trial without a jury the Court entered findings and conclusions favorable to the appellees, dissolved the restrain-

---

1. The plaintiffs-appellants are two citizens' organizations concerned with conservation and protection of natural resources and two individuals. The individuals are commercial outfitters sponsoring hunts in or near the area. The federal appellees are Government officers who administer programs in the Teton and Shoshone National Forests in Wyoming. Champion International Corporation is the company agreeing to purchase the timber under the contracts in question. No standing question is raised by the appellees.

ing order and dismissed the cause. After a notice of appeal was filed, this Court granted relief enjoining the carrying out of the contracts pending disposition of the appeal.

The District Court stated its findings and conclusions in detail. They thoroughly outlined the circumstances surrounding the actions contemplated under the timber contracts and the nature of the forest area involved. We need only restate the principal facts from the findings which essentially were as follows.

The timber sale contracts involved were made by the Forest Service with the appellee Champion International Corporation (Champion), on June 30, 1971, and June 30, 1972, involving respectively 7.33 and 8.41 million board feet of timber. The timber covered consists of mature and overmature lodgepole and similar pine species. Both sales are from areas in the Teton National Forest of Wyoming. The timber would be cut from 46 clearcuts.[2] The clearcuts were found to involve about 770 acres in a gross sale area of about 7,700 acres.[3]

The Court found that the land area included in the sales does not contain a pristine forest. Although classified by the Forest Service as a roadless area, it has been traversed for many years by jeep roads. It is also used by ranchers for the grazing of livestock and for the hunting of elk by licensed outfitters and others. The area included in the sales was found to be uninhabited except for various species of wildlife, four outfitter camps and a number of elk.

It was found that the Service made studies in the manner prescribed by the Forest Service Multiple-Use planning procedure, established pursuant to the Multiple-Use Sustained Yield Act of 1960, 16 U.S.C.A. § 528 et seq. These studies included consideration of hunting, livestock grazing, tourism, eyesores, erosion, soil stability, air quality, forest regeneration, fish habitat and other stated factors. Plans including these sales ultimately developed following the studies.

Both of the sales involved were publicly advertised for 30 days before acceptance of bids. An additional Multiple-Use Survey Report was prepared in December, 1970 and January, 1971, with respect to the first sale contract which was ultimately approved in May, 1971. Comments had been received from officials from the Wyoming Game and Fish Commission. With respect to the second sale contract, a Multiple-Use Survey Report Stage 1 was prepared and approved during February and March, 1970. A change was made from an originally planned road of some six miles to service the sales area to a second road of 2.81 miles in length outside of the "roadless area."

In January, 1973, Environmental Impact Reviews were prepared with respect to the sales. The Forest Service concluded that in view of the lack of significant effect on the human environment and consideration given to wilderness management, environmental statements were not needed for the sales in question.

The District Court also found that Champion was dependent on Forest Service sales to operate its mills at Riverton and Dubois, Wyoming. It was found that by October, 1973, Champion will have processed all logs on hand and that without these two sales, the company's two mills at those towns may

---

2. Clearcutting involves the removal of all standing timber in a specified area. The method is graphically shown by exhibits of both parties.

3. The figure of approximately 770 acres was apparently an inadvertent error in the finding. The testimony by the Forest Service Supervisor was that a little less than 700 acres are involved and the exhibits show a total of 670 acres. There appears also to be an inadvertent error as to the gross sale area covered by the two contracts. The 1971 contract describes a sale area of 5,500 acres and the 1972 contract, a sale area of 5,200 acres so that the gross sale area subject to both contracts is 10,700 acres.

have to be closed. Findings as to the substantial economic importance of Champion and the timber industry to Riverton and Dubois and to Fremont County were also made.

We must note that findings were made as to some fact questions that were in the area of controversy. There was conflicting testimony as to the claim of adverse effect of logging on elk herds. The Court found that harvest of the timber would have no adverse effect on the livelihood of the elk herds. It was found that additional hunting pressure resulting from roads could be adequately counteracted by closing of roads and regulation of hunting licenses so that no irreparable damage would occur to the elk. The "roadless" character of the area was also a matter of dispute. As stated, the Court found that the area did not contain a pristine forest because it was traversed by jeep roads and used for livestock grazing and for hunting. These findings as to subsidiary dispured facts are supported by substantial evidence and must be accepted as not clearly erroneous. Rule 52(a) F.R.Civ.P.

The District Court found that the administrative record introduced was adequate and supported the decision not to file an environmental impact statement and that the decision was not unreasonable in light of the facts and circumstances. The Court concluded, applying the standard of review which it determined to be proper, that the decision that no statement was required was based on consideration of relevant factors, did not result in any clear error of judgment, was not arbitrary or capricious or an abuse of discretion and was in accordance with law.

*Judicial review under standards required by the National Environmental Policy Act*

■ As stated, we must accept the findings including those made on disputed facts and supported by substantial evidence, as we have done. We are persuaded, however, that for reasons to follow, the ultimate conclusion of the District Court was not correct. The finding and conclusion that the EIS procedures did not apply are the dispositive points. The Court's ultimate determination that the statute's requirements had not been violated must be reviewed on appeal as essentially a legal conclusion, and not a fact finding subject to the clearly erroneous rule. See United States v. Mississippi Valley Generating Co., 364 U.S. 520, 526, 81 S.Ct. 294, 5 L. Ed.2d 268; United States v. Wholesale Oil Co., 154 F.2d 745, 747 (10th Cir.); Thomas v. Commissioner of Internal Revenue, 254 F.2d 233, 236 (5th Cir.).

■ We have an additional standard of review question. This is the issue of the proper standard for judicial review in determining whether the Forest Service decision in this case was correct that the procedural EIS requirements did not apply since no major federal action significantly affecting the human environment was involved.[4] As noted earlier, the District Court held that the standard of review to be applied is whether the negative determination by the agency was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

■ We are persuaded, however, that the administrative decision was not one of discretion such as administrative agencies have in innumerable matters

4. The major procedural protections of § 102 (C) include requiring the preparation of a detailed statement covering the following points: (1) probable environmental impact of proposed action, (2) unavoidable adverse environmental effects, (3) alternatives, (4) short-term uses versus long-term productivity, and (5) irreversible and irretrievable commitment of resources. Further, consultation with other related agencies prior to preparation of the statement and circulation of the statement to the President, the Council on Environmental Quality and the public are required prior to the agency's taking the proposed action.

and which is referred to in the general terms of § 706(2)(A) of the Administrative Procedure Act, 5 U.S.C.A. § 706(2)(A). NEPA's specific requirements in § 102 clearly speak in mandatory terms, and do not leave the determination to administrative discretion. National Helium Corp. v. Morton, 455 F.2d 650, 656 (10th Cir.); Calvert Cliffs' Coordinating Committee v. Atomic Energy Commission, 146 U.S.App.D.C. 33, 449 F.2d 1109, 1114; Citizens for Reid State Park v. Laird, 336 F.Supp. 783, 788 (D. Me.); cf. Parker v. United States, 448 F.2d 793, 797 (10th Cir.), cert. denied sub nom. Kaibab Industries v. Parker, 405 U.S. 989, 92 S.Ct. 1252, 31 L.Ed.2d 455. This Court recently stressed that "[t]he sweep of NEPA is extraordinarily broad, compelling consideration of any and all types of environmental impact of federal action," National Helium Corp. v. Morton, supra, 455 F.2d at 656, quoting the *Calvert Cliffs'* opinion, supra 449 F.2d at 1122.

■ Of course, there must be a determination whether the statute applies and some area of judgment is involved. However, we are convinced that the compass of the judgment to be made is narrow and that the determination must be reasonable in the light of the mandatory requirements and high standards set by the statute. See Save Our Ten Acres v. Kreger, 472 F.2d 463, 465 (5th Cir.); Hiram Clarke Civic Club, Inc. v. Lynn, 476 F.2d 421, 424 (5th Cir.); Natural Resources Defense Council, Inc. v. Morton, 148 U.S.App.D.C. 5, 458 F.2d 827, 834; Scherr v. Volpe, 336 F.Supp. 886, 888 (W.D.Wis.), aff'd on other grounds, 466 F.2d 1027 (7th Cir.); Natural Resources Defense Council, Inc. v. Grant, 341 F.Supp. 356, 366–67 (E.D.N.C.); see also National Helium Corp. v. Morton, supra 458 F.2d at 656; *Calvert Cliffs'*, supra 449 F.2d at 1114; but see

Hanly v. Kleindienst, 471 F.2d 823, 829 (2d Cir.), cert. denied, 412 U.S. 908, 93 S.Ct. 2290, 36 L.Ed.2d 974 (1973); Citizens for Reid State Park v. Laird, 336 F.Supp. 783, 788–789 (D.Me.); Goose Hollow Foothills League v. Romney, 334 F.Supp. 877, 879 (D.Or.).

■ We are persuaded that the general reference to discretion in § 706(2)(A) of the Administrative Procedure Act, although applicable to some other reviewable administrative decisions, see Citizens To Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136, does not apply here to the agency's determination under NEPA. Under the specific terms of NEPA we feel that the proper standard, as stated earlier, is whether the negative determination was reasonable in the light of the mandatory requirements and high standards set by the statute so as to be "in accordance with law"—another ground of review in § 706(2)(A) which may be applied consistently with the procedural demands of NEPA.[5]

*The disposition and appropriate relief*

Our case must be decided under the exacting standards of § 102. While we accept the findings that the harvest of timber would have no adverse effect on the livelihood of the elk, that the area did not contain a pristine forest, that it was traversed by numerous jeep roads, and the other evidentiary findings, nevertheless the undisputed facts remaining present a compelling case invoking the protective procedures of NEPA. As noted there will be 46 clearcut areas with removal of all timber from them, involving some 15.7 million board feet of timber. The clearcuts will cover 670 acres, dispersed through a gross sale area of 10,700 acres. The area is one traversed only by the jeep roads and is basically undeveloped.[6] It is described

5. This initial determination whether the protective procedures under § 102 apply is a narrow one, as opposed to the later determination after the agency and others are informed so as to be prepared to make a substantive decision under § 101. See *Calvert Cliffs'*, supra 449 F.2d at 1114.

6. These salient facts appear primarily in the administrative record. There also was supplementary proof offered by the parties without objection in the District Court. We therefore need not determine whether the evidentiary trial in that Court was within the limited scope indicated by Camp v. Pitts,

in the findings as an area now "uninhabited except for various species of wildlife, four outfitter camps, and a number of elk . . . " located in the setting of the Teton National Forest.

■ Under the high standards set by the statute, we cannot agree that the procedural protection of the statute does not apply. We are convinced that a major federal action significantly affecting the human environment is involved, within the meaning of the statute. To this effect Sierra Club v. Butz, 3 ELR 20071 (N.D.Cal.),[7] and other cases are persuasive.[8] In *Sierra Club* the Court issued a preliminary injunction, concluding that any contracts made by the Forest Service after July 1, 1972, that would change the wilderness character of any inventoried "roadless" or undeveloped area should not be made, and that no timber cutting, road building or acts that would change the wilderness character of such areas should be permitted under such contracts, until an impact statement was filed and acted on.[9]

The defendants argue that equitable relief sought by the plaintiffs would be inappropriate in any event. They point to the finding by the District Court that the plaintiffs failed to sustain their burden of proof that they will suffer irreparable injury without relief. Without deciding whether there would be irreparable injury to any of the wildlife or permanent destruction of the forests by performance of the contracts, we feel there is an overriding public interest in preservation of the undeveloped character of the area recognized by the statute. This public interest in preserving the character of the environment is one that the plaintiffs may seek to protect by obtaining equitable relief. See National Helium Corp. v. Morton, 455 F.2d 650, 654 (10th Cir.); Scherr v. Volpe, 466 F.2d 1027, 1034 (7th Cir.); Parker v. United States, 309 F.Supp. 593, 601 (D.Colo.), aff'd, 448 F.2d 793 (10th Cir.), cert. denied sub nom. Kaibab Industries v. Parker, 405 U.S. 989, 92 S. Ct. 1252, 31 L.Ed.2d 455. The clearcutting of the timber planned obviously will have a significant effect on the environment for many years. Thus the threat of environmental injury without compliance with the statute's procedures justifies equitable relief.

■ Moreover we cannot agree with the argument that the plaintiffs' delay in bringing suit disqualifies them for equitable relief. The District Court made no finding or conclusion of laches or delay in bringing suit and we do not feel that relief should be denied on such grounds in any event. It is true that the planning and studies for these timber sales extended as far back as 1966. However, the final decision to go for-

411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106. On the facts within the administrative record, or on those facts as supplemented by evidence taken in the District Court, our conclusion is the same and we must hold that the Forest Service erred as a matter of law in determining that the impact statement procedures did not apply.

7. Appeal docketed, No. 73–1646, 9th Cir., April 11, 1973.

8. For other cases requiring the preparation of an impact statement, see National Helium Corp. v. Morton, 455 F.2d 650 (10th Cir.), (Interior Department's cancellation of contracts to buy helium); Davis v. Morton, 469 F.2d 593 (10th Cir.) (administrative approval by the Bureau of Indian Affairs of a lease agreement involving a potential area of 5,-400 acres of restricted Indian lands); Goose

Hollow Foothills League v. Romney, 334 F. Supp. 877 (D.Or.) (construction of high rise apartment building in Portland, Oregon); Scherr v. Volpe, 466 F.2d 1027 (7th Cir.) (converting two-lane highway to four-lane freeway for distance of 12 miles); but see Kisner v. Butz, 350 F.Supp. 310 (N.D.W.Va.), wherein the building of 4.3 miles of forest roadway near a black bear habitat area was found not to be a "major federal action."

9. In response to this holding the Chief of the Forest Service, although maintaining that the Court's order went beyond the requirements of NEPA, issued a directive to all Regional Foresters that impact statements were to be prepared and filed on developments planned in inventoried roadless areas after July 1, 1972. The Forest Service also says that the directive does not apply to earlier contracts such as these.

ward with the sales without impact statements was only made in January, 1973. We do not feel that the circumstances bar equitable relief for the plaintiffs, particularly in view of the public interest sought to be protected by them.

For these reasons we must disagree with the District Court. As our earlier order provided, the judgment is reversed and the cause is remanded with instructions that an order be entered requiring that impact statements be prepared in connection with the timber cutting contracts in issue and that no performance of such cutting contracts shall be permitted until the impact statements be issued in accordance with the National Environmental Policy Act.