CITIZENS AGAINST 2,4–D, Sierra Club, both nonprofit corporations, and Shirley McCalla, Individually, David Peeler, Individually, Zora Peeler, Individually, Debby Myers, Individually, and Donna Lucas, Individually, Plaintiffs,

v.

James WATT, Secretary of the Interior; Alfred Hill, Regional Environmental Affairs Officer, Water and Power Resources Service, Southwest Region, Bureau of Reclamation, Department of the Interior; Charles A. Calhoun, Regional Supervisor of Water, Land and Power, Water and Power Resources Service, Southwest Region, Bureau of Reclamation, Department of the Interior; Robert H. Weimer, Regional Director Water and Power Resources Service, Southwest Region, Bureau of Reclamation, Department of the Interior; Robert Towles, Assistant Regional Director, Bureau of Reclamation, Water and Power Resources Service, Southwest Region, Department of the Interior; Andrew Peck, Bureau of Reclamation, Department of the Interior; Robert G. Karrh, Supervisory Civil Engineer, Water and Power Resources Service, Southwest Region, Bureau of Reclamation, Department of the Interior, all in their official capacities and individually, Defendants,

and

Jerry Loula, Superintendent, Ft. Cobb Reservoir Master Conservancy District; James H. Frampton, President, Ft. Cobb Reservoir Master Conservancy District Board of Directors; and Truman Williams, Secretary, Ft. Cobb Reservoir Master Conservancy District Board of Directors, all in their official capacities and individually, Defendants.

No. CIV–81–1006–D.

United States District Court, W. D. Oklahoma.

Aug. 11, 1981.

Barbara Rauch, Edmond, Okl., and David C. Hood, Oklahoma City, Okl., for all plaintiffs.

David Russell, U. S. Atty., by Kathleen Flanagan, Asst. U. S. Atty., Oklahoma City, Okl., for defendants Watt, Hill, Calhoun, Weimer, Towles, Peck and Karrh.

William E. Pain, Oklahoma City, Okl., for defendants Loula, Frampton and Williams.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

This is an action seeking to enjoin the Defendants from proceeding with a planned application of a herbicide, 2,4-dichlorophenoxyacetic acid (2,4–D), in the Fort Cobb Reservoir in western Oklahoma. A hearing was held in this action on Plaintiffs' Application for a Preliminary Injunction on July 31, 1981. Said Application was taken under advisement and the Temporary Restraining Order entered herein has been extended to August 12, 1981. At said hearing the parties agreed that the instant case should be accelerated due to the time constraints facing Defendants in their planned application. Accordingly, the Defendants filed answers to the Plaintiffs' Complaint, the Court dispensed with the necessity for a pre-trial conference and by agreement set the instant case for a trial on the merits on August 6, 1981. The Court will consider the evidence presented at said July 31 hearing in addition to the evidence presented on August 6, 1981, in making its determination of this case on the merits. The Court finds and concludes that this Court has subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1331, by reason of a substantial federal question being present.

Plaintiffs assert that Defendants plan to put 450 gallons of DMA (liquid) form of 2,4–D and approximately 4½ tons of BEE (granular) form of 2,4–D· into the public water supply at Fort Cobb Reservoir as an experiment in order to obtain data on the residue levels and rate of dissipation of 2,4–D in fish and hydrosoil. Furthermore, the 2,4–D will be applied to control the growth of Eurasian watermilfoil (watermilfoil), a water plant which has infested the Reservoir. Plaintiffs further assert that this action is a major federal action and it

will affect the environment and quality of life and by reason thereof Defendants are required by 42 U.S.C. § 4332(2)(C)[1] to file an Environmental Impact Statement (EIS). Plaintiffs assert that Defendants have failed to comply with the requirements of 42 U.S.C. § 4332 and they should be enjoined from continuing with the planned experiment until Defendants have completed an EIS.

Defendants did file on April 20, 1981, a "Finding of No Significant Impact", and a "final environment assessment of experimental application of 2,4–D herbicide for data collection at Fort Cobb Reservoir, Oklahoma," in May of 1981. Plaintiffs contend that both said documents are inadequate to meet the requirements of 42 U.S.C. § 4332(2)(C). Plaintiffs base in part their contention that said documents are inadequate on the fact that neither document contains a discussion of potential carcinogenic, mutagenic and teratogenic effects of 2,4–D upon laboratory animals.

Defendants contend that they have considered the available literature on the effects of 2,4–D; the effects of previous applications of 2,4–D to control watermilfoil in both Fort Cobb Reservoir and certain reservoirs in the Tennessee Valley Authority (TVA); and have found that the proposed application of 2,4–D involved herein will have no significant impact on the quality of human environment, hence an EIS is unnecessary. Defendants further contend that their proposed action is being done under an experimental permit issued by the Environmental Protection Agency (EPA), which agency has considered the proposed application of 2,4–D and has found that no significant impact will occur from said application.

An EIS is required under 42 U.S.C. § 4332 when an agency's action is a major federal action which significantly affects the quality of human environment. *Wyoming Outdoor Coordinating Council v. Butz*, 484 F.2d 1244 (Tenth Cir. 1973); *Metlakatla Indian Community v. Adams*, 427 F.Supp. 871 (D.D.C.1977). In this connection the initial determination concerning the necessity for an EIS lies with the federal agency initiating the action. *Jette v. Bergland*, 579 F.2d 59 (Tenth Cir. 1978); *Asphalt Roofing Manufacturers Ass'n v. I. C. C.*, 567 F.2d 994 (D.C.Cir.1977); *Metlakatla Indian Community v. Adams, supra.* Such a determination is subject to judicial review in the federal courts. *See generally Wyoming Outdoor Coordinating Council v. Butz, supra.*

The standard for judicial review of such an agency determination in this Court is whether a negative determination was reasonable in light of the mandatory requirements and high standards set by 42

1. 42 U.S.C. § 4332(2)(C) reads:

The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this chapter, and (2) all agencies of the Federal Government shall—...
(C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—
(i) the environmental impact of the proposed action,
(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,
(iii) alternatives to the proposed action,
(iv) the relationship between local short-term uses of man's environment and the

maintenance and enhancement of long-term productivity, and
(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.
Prior to making any detailed statement, the responsible Federal official shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved. Copies of such statement and the comments and views of the appropriate Federal, State, and local agencies, which are authorized to develop and enforce environmental standards, shall be made available to the President, the Council on Environmental Quality and to the public as provided by section 552 of Title 5, and shall accompany the proposal through the existing agency review processes;
. . . .

U.S.C. § 4332. *Wyoming Outdoor Coordinating Council v. Butz, supra.* An agency determination is reasonable if said decision demonstrates a compelling case of nonsignificance of the proposed action. *Joseph v. Adams,* 467 F.Supp. 141 (E.D.Mich.1978); see also, *Wyoming Outdoor Coordinating Council v. Butz, supra.*

 The testimony before the Court in the instant case indicates that the proposed action is a major federal action. The question remains, however, whether the proposed action will significantly affect the quality of the human environment in and around the Fort Cobb Reservoir. In this connection an agency action is significant when reasonably expected environmental consequences would affect a decision by said agency concerning the need for; or the proposed location, or design of, the proposed federal action. *Joseph v. Adams, supra.* In order to apply the above test of significance there must be an analysis of the need for the federal proposal; the environmental consequences which can reasonably be expected to be generated; and the availability of alternatives to achieve the objectives of the federal proposal. *Joseph v. Adams, supra.*

At the trial on the merits and the earlier hearing of July 31, 1981, both sides in this action presented several witnesses and documents in support of their respective positions. Based upon said evidence and upon the arguments of counsel for the parties involved herein, the Court makes the following findings of fact and conclusions of law:

 There is a need for the proposed federal action so that data can be collected concerning the use of 2,4–D to control watermilfoil. Without such data Defendants will not be able to acquire a permanent license from the EPA to use 2,4–D to control the serious problems created by the watermilfoil in Fort Cobb Reservoir. The evidence clearly shows that watermilfoil is an undesirable aquatic plant in the amount presently in the Fort Cobb Reservoir. Watermilfoil is a hazard to most recreational uses of the reservoir, it creates taste and ódor problems affecting the quality of the water used for residential purposes, and if unchecked watermilfoil will eventually infest major portions of the reservoir causing a reduction in the volume of water available for industrial and residential use in the Fort Cobb area. Plaintiffs presented testimony of Dr. Pfiester to the effect that if left alone the watermilfoil will die off on its own in the cooler weather. This testimony, however, is not supported by the more persuasive evidence before this Court that the watermilfoil problem at Fort Cobb Reservoir will not go away. The weight of the evidence is that the watermilfoil problem at the reservoir has been serious since at least 1974 and at the present time approximately 1000 acres out of about 4000 acres of lake area are infested with watermilfoil.

The Court further finds that the proposed application of 2,4–D in the instant case is so minute that no environmental consequences of any significance can reasonably be expected. The main concern of Plaintiffs in this regard is that harmful quantities of 2,4–D will get into the water supplies of the communities served by Fort Cobb Reservoir. The evidence, however, shows that in the proposed application of 2,4–D the amounts of 2,4–D concentration in the reservoir will not exceed the established tolerance[2] of the EPA. In this connection Defendants presented evidence that the Fort Cobb Reservoir was treated, in much greater concentrations than now proposed, with 2,4–D in 1974, 1975 and 1976 and that in these previous studies the concentration of 2,4–D in the water around the intake structures for the community water supplies never exceeded .0084 part per million, which is a significantly lower concentration than the tolerance established by the EPA. As the instant proposed application of 2,4–D treats only 100 acres of the reservoir instead of the 550 acres treated in 1974, 200

---

**2.** The established tolerance is that amount of allowable residue of a chemical which the EPA has established as safe for intake by humans.

Said tolerance for 2,4–D in potable water is .1 part per million.

acres treated in 1975, and 170 acres treated in 1976, it is reasonable to conclude that the concentration of 2,4–D around the intake structures will never exceed the established tolerance. Furthermore, Defendants have set up a program for daily monitoring of the concentration levels of 2,4–D near the intake structures which can be shut down with an alternate water supply being available if the tolerance is ever exceeded. Accordingly, there is no reason to believe that the proposed application will be a health hazard to humans' drinking water supplied by the Fort Cobb Reservoir.

Plaintiffs have also raised a question of the possible presence of dioxins as a contaminate in 2,4–D. All parties agree that dioxins are not desirable in a water supply and would present a health hazard to a population's drinking water. The great weight of the evidence clearly shows that the 2,4–D which is to be applied to the Fort Cobb Reservoir contains no detectable amounts of dioxins. In this connection Defendants presented testimony by Dr. Spencer, a toxologist with the EPA, and Fred Walker of the State Water Board that the type of 2,4–D (Weedar and Aqua-Kleen) to be applied to the reservoir was tested for dioxins by California Analytical Laboratories, Inc. Said test showed no detectable dioxins in either the Weedar or Aqua-Kleen types of 2,4–D. These studies tested the sample to within 20 parts per billion which the Defendants' witness stated was the highest possible sensitivity of the analyses.

The weight of the evidence presented also shows that Defendants considered the possible effects of the proposed application of 2,4–D on the hydrosoil, microorganisms within the reservoir, non-targeted vegetation and the fish and wildlife in and around the reservoir, and determined that the proposed application would have no significant impact. Furthermore, the Defendants held a technical meeting to discuss possible effects of 2,4–D inviting interested state and local bodies to send a representative, held a public meeting to discuss possible effects of 2,4–D with the general population, and examined the data provided by the TVA which has a permanent license for the appli-

cation of 2,4–D in eight reservoirs and has been making use of 2,4–D in said reservoirs since 1961 with no adverse effects on the human environment.

The Court finally concludes that the alternative methods of controlling watermilfoil were considered by Defendants before deciding to proceed with the application of 2,4–D involved herein, and that Defendants reasonably ruled out such alternatives as not possible or desirable at the Fort Cobb Reservoir.

In this connection the weight of the evidence indicates that there are four alternatives to chemical control of watermilfoil:

1. Lower the water level to expose the watermilfoil to the elements. This method is used in the TVA which enjoys an annual average rainfall of 55 inches along with 2,4–D application. However, this method of control is not practical in the Fort Cobb Reservoir due to low rainfall in the region. Reducing the water level to control watermilfoil would seriously affect the quantity of water for the communities relying on Fort Cobb Reservoir for their water supply.

2. Mechanical harvesting of the watermilfoil. This method has generally been found to be inadequate due to expense and is ineffective to control watermilfoil. Also, with this method the watermilfoil fragments and creates further infestation in the area and downstream.

3. Biological control through the use of fish which eat the watermilfoil. This method is not possible in Oklahoma as importation of the fish which eats watermilfoil, the grass carp, is prohibited in this state.

4. Fiberglass screening to block out the sunrays to kill the watermilfoil. This method has been found inadequate due to its great cost in a reservoir the size of Fort Cobb and because this method also kills desirable vegetation.

After considering the above alternatives, the Defendants found that 2,4–D treatment was the desirable method of controlling watermilfoil in Oklahoma and the data to be obtained in the proposed application of

2,4–D in Fort Cobb is necessary to enable Defendants to obtain a permanent license from the EPA for the use of 2,4–D.

In considering the foregoing, the Court finds and concludes that the Defendants took a hard look at the possible effects of the proposed application of 2,4–D, considered the available data, considered previous and present uses of 2,4–D to control watermilfoil, solicited comments from technicians and interested parties and properly and adequately determined that the proposed application of 2,4–D in the Fort Cobb Reservoir would have no significant impact upon the quality of the human environment. The Court further finds and concludes that the Defendants have made a compelling showing of non-significance of the proposed application and therefore the Defendants' determination of non-significance was reasonable. Accordingly, no EIS is necessary prior to the application of 2,4–D in the Fort Cobb Reservoir, as proposed by Defendants, and Plaintiffs are not entitled to the relief they seek in Plaintiffs' Complaint. Judgment should be entered in favor of Defendants and against Plaintiffs on Plaintiffs' Complaint. Judgment will therefore be entered dismissing Plaintiffs' action and dissolving the Temporary Restraining Order previously granted.