Alma Mae SMITH and Oklahoma
Wildlife Federation, Plaintiffs,

v.

SOIL CONSERVATION SERVICE, United
States Department of Agriculture; Ro-
land R. Willis, State Conservationist,
Soil Conservation Service, United States
Department of Agriculture; Norman A.
Berg, Chief, Soil Conservation Service,
United States Department of Agricul-
ture; and John R. Block, Secretary of
Agriculture, United States Department
of Agriculture, Defendants.

No. CIV–81–1602–D.

United States District Court,
W.D. Oklahoma.

Feb. 12, 1982.

Glen Smith, Edmond, Okl., and Barry G. Stafford, Edmond, Okl., for plaintiffs.

John E. Green and Eleanor Darden Thompson, Asst. U.S. Attys., Oklahoma City, Okl., for defendants.

## ORDER

DAUGHERTY, District Judge.

Upon consideration of Plaintiffs' Application for a Preliminary Injunction and after conducting an evidentiary hearing thereon, the Court finds that the same should be denied for the reasons hereinafter set out.

In this action Plaintiffs request the Court to review the determination of Defendants that an Environmental Impact Statement (EIS)[1] is not necessary and order the Defendants to make an EIS before constructing a water retardation dam at Site 1 in the Tri-County Turkey Creek Watershed Project in Harmon, Jackson and Greer Counties, Oklahoma. Site 1 is the location of one of 35 such dams contained in the project. Twenty-seven have been built to date. The responsible government agency has made an Environmental Impact Appraisal (EIA) together with an Environmental Assessment Summary (EAS) on Site 1 (made with seven other sites) and has determined as shown by said Appraisal that a detailed EIS is not necessary. Under consideration now is Plaintiffs' Application for a preliminary injunction to enjoin Defendants from proceeding with the construction of this dam at Site 1 until the case is heard on its merits.

Injunction is an extraordinary relief and the Court's injunctive power should be exercised with great caution. *C.J. Goldammer v. Fay*, 326 F.2d 268 (10th Cir. 1964). In determining whether to grant preliminary injunctive relief the considerations which the Court takes into account are well established. They are (1) likelihood of Plaintiffs' ultimate success on the merits, (2) irreparable injury to the Plaintiffs in the event interim relief is denied, (3) irreparable injury to other parties in the event such relief is granted and (4) the public interest. *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181, 1185 (10th Cir.1975); *see National Indian Youth Council v. Andrus*, 623 F.2d 694, 695 (10th Cir.1980); 11 Wright and Miller, *Federal Practice and Procedure: Civil* § 2948 (1973).

---

1. 42 U.S.C. § 4332(2)(C) reads:

    The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this chapter, and (2) all agencies of the Federal Government shall—...

    (C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

    (i) the environmental impact of the proposed action,

    (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

    (iii) alternatives to the proposed action,

    (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

    (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

    Prior to making any detailed statement, the responsible Federal official shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved. Copies of such statement and the comments and views of the appropriate Federal, State, and local agencies, which are authorized to develop and enforce environmental standards, shall be made available to the President, the Council on Environmental Quality and to the public as provided by section 552 of Title 5, and shall accompany the proposal through the existing agency review processes;

    . . . .

Plaintiffs assert herein that building the dam at Site 1 is a major Federal action significantly affecting the quality of the human environment. Defendants acknowledge that the construction of the dam at Site 1 is a major Federal action but claim that the construction of the same will not significantly affect the quality of the human environment, hence an EIS is not required and their determination to that effect as shown by the EIA should not be disturbed upon judicial review.

■ An EIS is required under 42 U.S.C. § 4332 when an agency's action is a major Federal action which significantly affects the quality of human environment. *Wyoming Outdoor Coordinating Council v. Butz,* 484 F.2d 1244 (10th Cir.1973); *Metlakatla Indian Community v. Adams,* 427 F.Supp. 871 (D.D.C.1977). In this connection the initial determination concerning the necessity for an EIS lies with the Federal agency initiating the action. *Jette v. Bergland,* 579 F.2d 59 (10th Cir.1978); *Asphalt Roofing Manufacturers Ass'n v. I.C.C.,* 567 F.2d 994 (D.C.Cir.1977); *Metlakatla Indian Community v. Adams, supra.* Such a determination is subject to judicial review in the Federal Courts. *See generally Wyoming Outdoor Coordinating Council v. Butz, supra.*

■ The standard for judicial review of such an agency determination is whether a negative determination was reasonable in light of the mandatory requirements and high standards set by 42 U.S.C. § 4332. *Wyoming Outdoor Coordinating Council v. Butz, supra.* An agency determination is reasonable if said decision demonstrates a compelling case of nonsignificance of the proposed action. *Joseph v. Adams,* 467 F.Supp. 141 (E.D.Mich.1978); *see also, Wyoming Outdoor Coordinating Council v. Butz, supra.*

The evidence reveals generally the following about the contemplated construction at Site 1:

The State Soil Conservation District involved owns the quarter section (Southeast Quarter of Section 5, Range 24 West, Township 3 North, in Harmon County, Oklahoma) on which practically all of the Site 1 dam project will be located; the earthen dam itself is planned to occupy approximately four acres; a sediment pool created by the dam will contain water most of the time and will occupy approximately 90 acres; a flood pool (around the sediment pool) which will contain water infrequently for short periods and will be fully covered with water only once every 25 years (estimated) will occupy an additional approximately 173 acres; there is some farm land in this area; a few native trees are located on the dam site itself and approximately a total of 150 native trees of varying sizes are located in the entire project area; there are also shinnery, sagebrush, mesquite, native grasses and wild flowers in the area; at least as to the sediment pool and dam site such vegetation will be eliminated by the construction; except for a few acres bordering the sediment pool vegetation in the flood pool will not be eliminated, either by construction or through use of the retardation dam.

■ As to the first matter to consider regarding the issuance of a preliminary injunction in this case (Plaintiffs' likelihood of success on the merits), this involves whether the Defendants' determination that this project will not significantly affect the quality of the human environment was reasonable and if Defendants have made a compelling case of nonsignificance. *Wyoming Outdoor Coordinating Council v. Butz,* 484 F.2d 1244 (10th Cir.1973); *Joseph v. Adams,* 467 F.Supp. 141 (E.D.Mich.1978). The Court finds and concludes that such determination by Defendants will most likely be found to be reasonable under the circumstances of this case. Defendants have presented evidence to support a compelling case of nonsignificance. Plaintiffs have failed to show the required likelihood of prevailing on the merits. In this connection, it is the thrust of Plaintiffs' evidence that the trees, shinnery, grasses and wild flowers to be eliminated form a natural habitat for wildlife and botanical study which is only found in this area in this precise location. To the contrary, the evi-

dence of Defendants is to the effect that such vegetation is native to that part of the State and is found throughout the creek bottoms of the area and the County; that considering the small amount of acreage and vegetation involved and the mitigation plan contemplated to mitigate this loss by new planting of vegetation, there will be no significant effect on the quality of the human environment by building the flood control dam at Site 1 as a part of the approved 35 dam project. The Court is of the opinion that Plaintiffs' position that such vegetation is found only in the location of Site 1 is incredible and common sense as well as Defendants' evidence and aerial photographs in evidence clearly establish that this native vegetation is not unique to Site 1 but exists in varying degrees throughout the area. It will be most difficult for Plaintiffs to establish that the loss of the small amount of natural habitat involved in Site 1 will significantly affect the quality of the human environment as contemplated by the statute involved under the circumstances of this case.

As to the second matter to consider regarding the issuance of a preliminary injunction (irreparable injury to Plaintiffs if the injunction is not granted), the parties are in disagreement. No evidence was presented as to how Plaintiff Alma Mae Smith would be irreparably injured. The other Plaintiff, Oklahoma Wildlife Federation, is a private organization dedicated to preserving natural habitat for wildlife in the State of Oklahoma. In the sense that the construction of the dam will result in the elimination of the vegetation and natural habitat as presently exists in approximately 100 acres of Site 1, this would be irreparable for it cannot be replaced even with a good mitigation plan. This is Plaintiffs' position. Defendants assert that in the sense of the quality of the human environment in this area of the State regarding such vegetation and natural habitat, the elimination of this small amount of the same cannot be considered irreparable. Each position has some validity. As to the sediment pool which contains approximately six acres of timber, once cleared this vegetation is gone as this area will be covered with water. Yet from the overall picture of the quality of the human environment in the area as to natural habitat, it can be argued that said overall picture has not been irreparably injured. In the opinion of the Court the position of Defendants on this point is the proper way to ultimately view the matter of irreparable injury and hence neither Plaintiff has shown a viable case of irreparable injury to the quality of the human environment as to natural habitat in this area of the State should Site 1 proceed.

As to the third matter to consider regarding the issuance of a preliminary injunction (irreparable injury to Defendants), there is little evidence on this point. A construction contract has been let by Defendants. Delay could increase costs. However, money loss is generally not found to be an irreparable injury, though it may be argued that when there is no one who could be held responsible for delay costs, the same could be irreparable. As this overall project of 35 dams started in 1963 and this dam, the eighth from the last of the dams, is only now being initiated, it is doubtful that a delay in construction would be an irreparable injury to Defendants though it would probably increase the cost of the project.

As to the fourth matter to be considered regarding the issuance of a preliminary injunction (the public interest), this requires a weighing of Plaintiffs' claim of the loss of approximately 100 acres of natural habitat to those who might use it against the protection of approximately 12,000 acres of farm land below the dam from damage by flooding and the interest in completing the entire project as planned and approved for the three counties involved. Under the circumstances it appears to the Court that the public interest clearly is served by said protection from flooding and the completion of the overall project.

The Court therefore finds and concludes for the foregoing reasons and a balancing of the same, that Plaintiffs' Application for the requested preliminary injunction should be denied.