EARTH FIRST; Oregon Natural Resources Council; Richard Kirk Bailey; Claudia Beausoleil; Karan Bedell; Romain M. Cooper; Rick Landt; Steven S. Marsden; Dawn E. Maxwell; G. Pedro Tama; Chant Thomas, Plaintiffs,

v.

John R. BLOCK, in his official capacity as Secretary of the United States Department of Agriculture; R. Max Peterson, in his official capacity as Chief of the Forest Service of the Department of Agriculture, Jeff M. Sirmon, in his official capacity as Regional Forester of the Pacific Northwest Region of the Forest Service of the Department of Agriculture; Plumley, Inc., an Oregon corporation, Defendants.

Civ. No. 83–6298–ME–RE.

United States District Court,
D. Oregon.

July 15, 1983.

416

Neil S. Kagan, James A. Arneson, Roseburg, Or., for plaintiffs.

Charles H. Turner, U.S. Atty., Thomas C. Lee, Asst. U.S. Atty., Robert M. Simmons, Sp. Asst. U.S. Atty., U.S. Dept. of Agriculture, Portland, Or., for defendants.

Leonard B. Netzorg, Portland, Or., for defendant Plumley, Inc.

## OPINION

REDDEN, District Judge:

Plaintiffs seek to enjoin the United States Forest Service from changing the wilderness character of the North Kalmiopsis Roadless Area, adjacent to the Kalmiopsis Wilderness in southern Oregon. I granted a Temporary Restraining Order against road construction in the North Kalmiopsis until July 6, 1983. On that date the plaintiffs and the government were heard, as well as the road builder, Plumley, Inc. I had ordered Plumley joined as a necessary party. After that hearing I continued the Temporary Restraining Order until the hearing on Preliminary Injunction on July 13, 1983. Following that hearing, I granted the plaintiffs' motion for a preliminary injunction restraining further road building and commercial development. This Opinion states my reasons for so acting. In summary, I believe that the issuance of an injunction is required by a recent Ninth Circuit case, *California v. Block,* 690 F.2d 753 (9th Cir.1982), in which the Ninth Circuit held that the Forest Service had acted improperly in approving "Nonwilderness" designations for roadless areas, as part of the nationwide RARE II review of roadless areas, without conducting a site-specific Environmental Impact Statement (EIS) preparation aimed at gauging the effects of the designation of land as "Nonwilderness." *See Id.* at 690 F.2d 760–765. The Ninth Circuit ruled that the absence of such an EIS violated the National Environmental Policy Act, 42 U.S.C. §§ 4331–4332 (1976) ("NEPA"). Since there is no such site-specific EIS gauging the effects of the Nonwilderness designation in *this* case, I am required to enjoin road construction, logging and other nonwilderness uses unless or until a valid EIS is prepared.

## BACKGROUND

The Forest Service's RARE II program was the subject of an opinion by Judge Karlton in *State of California v. Bergland,* 483 F.Supp. 465 (E.D.Cal.1980), and by the Ninth Circuit in *California v. Block, supra,* 690 F.2d at 753. Only a brief summary of the facts is given here to provide the necessary background.

The Forest Service manages approximately 190 million acres of public lands, of which some 62 million acres, referred to as RARE II areas herein, are roadless areas which have not been subject to significant human effects. Some 19 million acres similar to the RARE II areas have been added to the National Wilderness Preservation System, and thus have received special statutory protection from commercial development. The Forest Service is charged with the responsibility of examining the special attributes of "primitive" areas such as the RARE II lands, and recommending to Congress which lands should be added to the National Wilderness Preservation System through a "Wilderness" designation. 16 U.S.C. § 1132; *see also California v. Bergland, supra,* at 483 F.Supp. 471; *California v. Block, supra,* at 690 F.2d 757–758.

In 1972, the Forest Service launched its initial attempt to accomplish this task *en masse,* through a nationwide planning document which was not supported by an EIS, and did not comply with NEPA. This effort was called "RARE I," for "Roadless Area Review and Evaluation." The noncompliance with NEPA requirements led to the early abandonment of this program when the Tenth Circuit enjoined the development of roadless areas until NEPA compliance was established through preparation of EIS documents. *Wyoming Outdoor Co-*

*ordinating Council v. Butz,* 484 F.2d 1244 (10th Cir.1973). The Forest Service abandoned the RARE I approach, and prepared individual, site-specific EISs for future development projects in roadless areas.

In 1977 RARE II was launched. Under this program the Forest Service examined the property *en masse* and prepared a document classifying the 62 million acres into three categories. Such classifications would virtually control the future use of those lands. Generally, the classifications were "Wilderness," "Further Planning" and "Nonwilderness." No site-specific EIS was prepared, paying specific attention to the attributes of each site designated "Nonwilderness."

"Wilderness" areas would be recommended to Congress for inclusion in the National Wilderness Preservation System and would receive statutory protection against development. "Further Planning" lands would be protected on an interim basis until completion of more studies. Finally, "Nonwilderness" lands would be released for commercial development.

On January 8, 1980, Judge Karlton ruled that the Forest Service had violated NEPA by designating lands as "Nonwilderness" without sufficient site-specific attention evidenced by the preparation of a site-specific EIS. *State of California v. Bergland, supra,* 483 F.Supp. 465. That decision thus collaterally estopped the government to contend that its proposals for development of RARE II lands, such as the land in the present case, complied with NEPA.

On October 22, 1982, the Ninth Circuit Court of Appeals affirmed the decision. *State of California v. Block, supra,* 690 F.2d 753 (9th Cir.1982). It thus became the precedent of this Circuit that the Forest Service's development of RARE II lands violated NEPA, and the collateral estoppel effect of Judge Karlton's ruling was re-affirmed.

The present case concerns the Forest Service's plans for logging a RARE II area, the North Kalmiopsis Roadless Area, in Oregon. The plaintiffs argue that the Forest Service is estopped to contest its noncompliance

with NEPA as the result of the previous decisions, both of which invalidated the RARE II program. Defendants argue that plaintiffs, or at least some of the plaintiffs, are barred from making this assertion by the res judicata effect of an Oregon decision, *Sierra Club v. Block,* Civ. No. 82–1006–FR (D.Or. Aug. 30, 1982) (Unpublished order denying motion for preliminary injunction). Defendants also argue that they complied with NEPA mandates in the present case.

I hold that the government is collaterally estopped from claiming compliance with NEPA. I further hold that the controlling precedent in this Circuit compels a finding that designation of "Nonwilderness," without a supporting site-specific EIS violates NEPA. Further development of the North Kalmiopsis must be barred pending NEPA compliance. I disagree with defendants that *Sierra Club v. Block,* which did not reach the contention of these plaintiffs, bars any non-party thereto from urging the position ultimately adopted by *California v. Block.* After examining the points upon which the defendants seek to distinguish this case from *California v. Bergland* and *California v. Block,* I find that this case is indistinguishable and that the crucial arguments defendants make here were specifically rejected in those decisions. Consequently, I find that the plaintiffs will prevail on the merits and would suffer irreparable harm from the construction of the road at issue here, and that a preliminary injunction barring further construction must issue.

DISCUSSION

A. THE DECISIONS OF JUDGE KARLTON AND THE NINTH CIRCUIT CONCLUSIVELY ESTABLISH THAT THE LOGGING OF THE NORTH KALMIOPSIS ROADLESS AREA VIOLATES THE NATIONAL ENVIRONMENTAL POLICY ACT (NEPA)

Plaintiffs argue that the government is collaterally estopped by Judge Karlton's decision and that the decision of the Ninth

Circuit invalidates RARE II on NEPA grounds. Plaintiffs also argue that the decision of the Ninth Circuit establishes a precedent of this Circuit which is "on all fours" with the present case, and its precedential effect forecloses any argument by either the government or the contractor, Plumley, Inc., that NEPA was complied with. I agree that the government is estopped and in any event the Ninth Circuit's decision is a direct and controlling precedent in this case.

The Ninth Circuit has specifically examined the requirements for offensive use of collateral estoppel against the government in *Starker v. United States,* 602 F.2d 1341 (9th Cir.1979), *Mendoza v. United States,* 672 F.2d 1320 (9th Cir.1982) and *Barretto v. United States,* 694 F.2d 603 (9th Cir.1982). I apply the analysis contained in those cases in deciding whether *California v. Bergland, supra,* and *California v. Block, supra,* collaterally estop the government. I conclude that estoppel applies.

■ The use of "offensive" as opposed to "defensive" collateral estoppel is endorsed in those cases, and the fact that it is the government as opposed to a private party who will be estopped is of no consequence. The relevant considerations are: (1) whether there is a "substantial overlap" in the evidence or argument advanced in the first proceeding and that sought to be advanced in the second proceeding; (2) is the same rule of law involved; (3) could pretrial preparation and discovery be expected to include the positions in the two proceedings; and (4) are the claims closely related. *See Starker v. United States, supra,* at 602 F.2d 1344–1350.

■ In the present case these requirements are satisfied. The issue in this case, as in *California v. Block* and *California v. Bergland,* is whether the Forest Service may designate an area as Nonwilderness without a site-specific EIS addressed to that issue, relying instead upon the RARE II EIS which the Ninth Circuit determined was faulty, and a subsequent EIS which cannot consider the wilderness question but only analyzes the value of various nonwild-

erness alternatives. *See California v. Block, supra,* at 609 F.2d 761–763; *California v. Bergland, supra,* at 483 F.Supp. 473–477. The issue in this case is identical with that previously litigated. The same rule of law is involved. Issues of pretrial proceeding and discovery are not relevant since this is a legal conclusion based upon facts which are, and were, uncontested. The fact that one roadless area is in Oregon and the other in California is likewise irrelevant since the issue is compliance with NEPA. That law, and the RARE II program and its validity are nationwide. Collateral estoppel applies against the government.

In this case the government contends that, quite apart from the RARE II EIS, a subsequent EIS was also prepared. That EIS, for the Rogue-Illinois Planning Unit which includes the Kalmiopsis area, does not undertake an analysis or consideration of the Wilderness/Nonwilderness issue. Rather, the Rogue-Illinois EIS depends upon the *invalidated* RARE II EIS on that point, and merely considers, given that the area should be Nonwilderness, how its resources should be utilized by commercial and recreational interests. *See* Rogue-Illinois Planning Unit EIS at pp. 50–52; *cf. State of California v. Bergland* at 483 F.Supp. 475–477; *State of California v. Block* at 762–763:

> Future decisions concerning these areas will be constrained by [the choice made in the RARE II EIS of Wilderness or Nonwilderness]. While the [Forest Service] regulations technically permit consideration of wilderness values and features in forest planning, *such consideration is pointless in the absence of discretion to manage a Nonwilderness area in a manner consistent with wilderness preservation. Similarly, the promise of site-specific EIS's in the future* [such as the Rogue-Illinois Planning Unit EIS] *is meaningless if later analysis cannot consider wilderness preservation as an alternative to development.* The 'critical decision' to commit these areas for nonwilderness uses, at least for the next ten or fifteen years, is 'irreversible and irret-

rievable.' The site-specific impact of this decisive allocative decision must therefore be carefully scrutinized now and not when specific development proposals are made.

690 F.2d 762–763, footnote omitted, emphasis added.

In light of the above, the government cannot contend that the issue in this case was not decided against it, either as a matter of collateral estoppel or as controlling precedent.

■ The contractor, Plumley, Inc., is not estopped by the prior decisions. However, Plumley does not contend that the RARE II EIS was valid. He contends that the site-specific consideration of the Rogue-Illinois EIS was adequate to support a Nonwilderness designation. *California v. Block* rejected that argument and it is the precedent I apply.

Therefore, either as controlling precedent or collateral estoppel, the plaintiffs' argument that the designation of the Kalmiopsis as Nonwilderness was not in compliance with NEPA prevails. Given that, development in the entire area, not supported by a valid EIS, must as a matter of law be enjoined.

### B. PLAINTIFFS ARE NOT BARRED FROM ASSERTING NONCOMPLIANCE WITH NEPA

■ The government and Plumley assert that, even if they are barred from litigating their noncompliance with NEPA requirements, the plaintiffs are barred from asserting that noncompliance because of *Sierra Club v. Block*. There, the issue of the invalidity of RARE II was not raised by any party but, in the opinion of defendants, should have been. I agree that some party to that prior litigation should have brought the law to the court's attention. The court was not advised of a previous ruling, then on appeal, which held that there was no valid EIS to support the Nonwilderness designation of the Kalmiopsis.

The history is this. *California v. Bergland, supra,* holding that the government's

action in designating RARE II lands as Nonwilderness was illegal, issued on January 8, 1980. The Forest Service appealed. Approximately one year later, on February 26, 1981, the Forest Service approved a timber sale in the Kalmiopsis area. Several parties filed administrative appeals from that decision. The Forest Service denied those appeals on April 30, 1982. On July 13, 1982, the Forest Service awarded a road construction contract to Plumley, Inc., for construction of a logging road to reach the timber site. In August 1982, the Sierra Club and other named plaintiffs brought an action seeking to enjoin the building of the road on the grounds that the Forest Service had violated NEPA. Those plaintiffs did not contend that the Nonwilderness designation was invalid under NEPA, but attacked other aspects of the Forest Service's NEPA compliance. The plaintiffs in that case were aware of Judge Karlton's decision, which would have estopped the government, but chose to litigate the August 1982 case upon a narrower ground, the adequacy of the Rogue-Illinois EIS. The government did not raise the RARE II issue, or advise the court of existing case law on point.

The court denied plaintiffs' application for a preliminary injunction on August 30, 1982. On October 22, 1982, the Ninth Circuit decided *California v. Block,* affirming *California v. Bergland.* There were no further hearings in *Sierra Club v. Block,* and on January 13, 1983, all parties agreed to a dismissal of that case "with prejudice" without a final determination of the plaintiffs' claim of noncompliance with NEPA.

Defendants argue that the previous proceeding bars at least some of the present plaintiffs from making assertions of noncompliance with NEPA in this one. It appears that the Oregon Natural Resources Council, which is a party to this case, was also a party to the previous case under the name "Oregon Wilderness Coalition." It may be that at least two of the individual plaintiffs in the present suit were members of the organizations which prosecuted the *Sierra Club v. Block* action. Defendants

argue that those particular plaintiffs are barred by the prior judgment from asserting their claims in this suit.

Even if this were the case, there are parties to this action which were not parties to *Sierra Club v. Block* and were not in privity with any party in that action. Since those non-parties cannot be bound by the prior decision, the court would proceed in any event to order compliance with NEPA. *See United States v. ITT Rayonier,* 627 F.2d 996, 1000–1003 (9th Cir.1980).

There are further reasons why such preclusion should be denied in the present case. For example, the ruling in *Sierra Club v. Block* was not final on the merits but one upon the facts then and there presented. It appeared that the plaintiffs' chance of prevailing on the merits was not great. That initial determination would not preclude a later holding that, in light of a newly announced precedent, the chance of prevailing had increased. Although the plaintiffs in the prior action subsequently dismissed their case "with prejudice," this was not a judicial determination of the merits of their claim.

In fact, the plaintiffs acted under the impression that further litigation of the proposed Kalmiopsis development was unnecessary, since it was expected that the Forest Service would abandon developments in RARE II areas within the Ninth Circuit, including the Kalmiopsis, in response to the Ninth Circuit decision. Public statements by Forest Service officials during the winter and spring were consistent with the Forest Service's apparent abandonment of development. Forest Service officials made public statements to the effect that the Ninth Circuit's decision in *California v. Block* was correct and would not be appealed, that the Forest Service agreed that it had acted erroneously and was reviewing all pending development projects in light of the decision. However, in April of 1983, the Forest Service decided to attempt to proceed with the Kalmiopsis project, despite the Ninth Circuit decision. The plaintiffs in the present action then acted with diligence to appeal that decision

administratively and to find counsel who would prosecute another court challenge to the Kalmiopsis development.

Finally, preclusion in this case will not serve interests of repose or judicial economy, since the defendants are collaterally estopped to contest the illegality of their conduct. The existence of the contrary decisions on the merits renders an application of res judicata barring claims *not* asserted or revealed inapposite.

I find that the circumstances of this case would warrant a departure from res judicata principles when invoked against the plaintiffs in the prior action. Further, there are plaintiffs in this action who would not be barred by the prior action, since they were not parties to it and were unaware of it. I rely especially upon the presence in this action as a party plaintiff of Claudia Beausoleil, who was not a party to the August 1982 action and was not a member of any precluded group.

## C. THE GOVERNMENT'S REMAINING CONTENTIONS ARE WITHOUT MERIT

■ The government also finds comfort in the fact that Congress added the South Kalmiopsis to the Wilderness System in 1978. *See* Endangered American Wilderness Act, 16 U.S.C. § 1132, Pub.L. 95–237, Feb. 24, 1978, 92 Stat. 40 (1978). The government interprets the addition of the *Southern* Kalmiopsis to the Wilderness System as a decision by Congress that the *North* Kalmiopsis should not be wilderness and, hence, should be Nonwilderness.

The government's argument is without merit. Congress has, through the years, added lands to the Wilderness System. This does not evidence an intent that the remaining lands, not then included, should be Nonwilderness. In fact, all additions of acreage to the Wilderness System have come after other acres had been so designated. The government does not point to any specific clause of the 1978 Act or its legislative history to support its argument. Nor does the government explain why RARE II continued if Congress had appar-

ently decided in 1978 that all lands not a part of the Southern Kalmiopsis should forever be Nonwilderness. The government does not explain why Congress is now considering a bill to exempt land in Oregon, *see* H.R. 1149, if the Congress had previously repealed NEPA in the Endangered American Wilderness Act. I reject the government's argument.

 The government also argues that a congressional line item appropriation for the construction of the logging road in question indicates congressional intent to repeal NEPA as to the North Kalmiopsis. I find no such legislative intent. The inclusion of the line item is not such an indication, absent some showing that Congress was explicitly addressing the matter of NEPA compliance as well as authorizing funds in the event of NEPA compliance. *See Sierra Club v. Andrus,* 610 F.2d 581, 600–602 (9th Cir.1979). Note that Congress authorized appropriations for the RARE II EIS program which does not mean that RARE II complied with NEPA. *See California v. Block, supra.* In fact, Congress appears to have appropriated money for the road subject to the NEPA requirements which it previously imposed. *See Sierra Club v. Andrus, supra,* at 600–601 n. 29. Congress may appropriate funds subject to control over their use consistent with NEPA.

### D. THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION ARE SATISFIED

 The plaintiffs have demonstrated that they will likely prevail on the merits and that the building of the road will cause irreparable harm in destroying a wilderness habitat which cannot be restored. They have also established that the public interest favors the issuance of an injunction, since it would be wasteful of public funds to continue to build a road which cannot legally be used, and since public lands should not be illegally despoiled. *See National Wildlife Federation v. Adams,* 629 F.2d 587, 590 (9th Cir.1980). I find that such an injunction should issue. A separate

Order shall embody that injunction, which shall also allow the government and the contractor to continue certain construction activities necessary to prevent erosion in the area of road construction in progress. With respect to projects or development plans other than the Bald Mountain Road, the injunction shall forbid such projects or any other actions inconsistent with the wilderness character of the North Kalmiopsis unless or until the requirements of *California v. Block* and NEPA have been met.